(Opinion published 55 N. W. Rep. 818.)

---

## ANDERS NELSON vs. PETER A. CARLSON.

Submitted on briefs June 14, 1893.   Affirmed June 29, 1893.

**The Right to Rescind, Based on Deceit, not on Values.**

In an action for the rescission of a contract of exchange of real properties on the ground that the defendant falsely and fraudulently pointed out to plaintiff one lot as the land that was to be conveyed to him, while the lot in fact conveyed was an entirely different one, the right of plaintiff to a rescission depends, not upon whether the lot pointed out was worth more than the one actually conveyed, but upon the fact that he did not get the property which it was represented that he was getting.

**Offer to Rescind, before Action Commenced, not Necessary.**

*Knappen* v. *Freeman,* 47 Minn. 491, followed to the effect that, where a party seeks the aid of a court to rescind a contract, it is not necessary that he should have previously attempted a rescission, or made any tender to the other party, except where such tender is necessary to put the other party in default.

**New Trial for "Accident," "Surprise," or "Newly-Discovered Evidence."**

Motion for a new trial on the grounds of "accident and surprise" and of "newly-discovered evidence" *held* to have been properly denied.

Appeal by defendant, Peter A. Carlson, from an order of the District Court of Chisago County, *F. M. Crosby,* J., made December 30, 1892, denying a new trial.

On March 17, 1892, the plaintiff, Anders Nelson, owned out-lot No. two in Franconia, in that county, containing seventeen acres, and worth $1,000, but subject to a mortgage for $335. He was sixty-nine years old, feeble, weak-minded and unable to read or understand English. Defendant, by his agent Charles Swenson, proposed to him to deed to him lot twenty-one (21) in block nine (9) of Morrison & Lovejoy's Addition to Minneapolis, subject to $1,300 incumbrance, in exchange for his out-lot, subject to $335. He took plaintiff to the property, and showed it to him. It had a double house and a red barn on it. Plaintiff agreed to the exchange, and deeded his out-lot to him. Defendant fraudulently deeded to plaintiff, not the lot so shown, but lot eighteen (18) in block nine (9) in the same Addition. It had a smaller double house but no barn on it, and was worth $700 less than the other, but was incumbered for a like amount. Both houses front onto Twenty-fifth avenue, and are both on the same side of the street.

Plaintiff soon after discovered the fraud, and brought this action to rescind the exchange, and offered to reconvey the Minneapolis house and lot. The issues were tried November 5, 1892. Findings were made and judgment ordered for plaintiff declaring his deed to defendant void for fraud, and directing it and the record thereof to be canceled, with costs. R. P. Hoskyn was then substituted as attorney for defendant in place of A. B. Darelius, and a motion was made December 29, following, for a new trial, on the ground of accident and surprise, which defendant could not with ordinary prudence have guarded against, and for newly-discovered evidence, and for errors in law occurring at the trial. This motion was denied, and he appeals.

*R. P. Hoskyn,* for appellant.

*J. P. Nelson,* for respondent.

MITCHELL, J. This was an action for the rescission of an executed contract of exchange of properties, the plaintiff having executed to defendant a conveyance of certain land in the village of Franconia in consideration of a conveyance by the latter to the former of a house and lot in the city of Minneapolis.

The ground on which a rescission is asked is the alleged false and fraudulent representations of defendant, or rather of his agent

through whom the trade was made, by which one house and lot was pointed out to plaintiff as the property which it was proposed to convey to him, and which he supposed he was getting, while the property actually conveyed to him was an entirely different house and lot.

If such was the fact, (and the court has so found on what we deem sufficient evidence,) this was good ground for rescission, provided it was seasonably asserted by plaintiff after the discovery of the fraud.

The assignments of error predicated upon the admission of evidence as to the relative values of the two houses and lots in Minneapolis, or upon the absence of evidence of the value of the Franconia land, are without merit. The right of the plaintiff to a rescission depended, not upon the fact that the property pointed out to him was worth more than the property which was conveyed to him, but upon the fact that he did not get the property which it was represented that he should get. Hence the question of relative values was wholly immaterial, unless it might possibly have some bearing upon the question of a motive on part of defendant or his agent to deceive the plaintiff. The value of the Franconia property was equally immaterial, and for the same reason. It may be true, as suggested by defendant, that to entitle plaintiff to a rescission it must appear that he parted with something of value; but this land will be presumed to be of some value, but how much that was, whether great or small, is not important.

If false and fraudulent representations were made to plaintiff, and he relied upon them in making the trade, it does not lie in the mouth of defendant to say that he was negligent in relying on them, or that, before the contract was executed, facts were brought to his notice that ought to have put a reasonably prudent man upon inquiry as to their truth or falsity.

This is sufficient answer to some suggestions made by defendant's counsel upon the argument.

One of the main points made by defendant is that plaintiff was not entitled to the relief asked because he had not before suit tendered a reconveyance of the property which he had received. This point is fully covered by the case of *Knappen* v. *Freeman*, 47 Minn. 491, (50 N. W. Rep. 533,) where it is said that when a party

seeks the aid of a court to rescind a contract it is not necessary that he should have previously attempted a rescission, or that he should have made any tender to the other party, except where such tender might be necessary to put the party in default. What he ought to do, and must do, to reinstate the other party *in statu quo* as a condition of the rescission, is then for the court to determine.

All that is required to justify a rescission by the court is that the contract is one that a court of equity will cancel or rescind on the ground alleged, that such ground of rescission exists, and that plaintiff has not lost this right by affirmance, laches, or otherwise. In the present case the order for judgment was erroneous in that it provided unconditionally for a cancellation of the deed from plaintiff to defendant, while it ought to have been upon condition of plaintiff's reconveying to defendant. But there is no assignment of error which covers this. It was doubtless a mere inadvertence on the part of the trial court, which would have been, and may still be, corrected on mere suggestion of the mistake.

After the trial and decision of the case the defendant changed his attorneys, and this, like a change of physicians, naturally enough suggested a change of treatment; and thereupon the defendant moved upon affidavits for a new trial upon the grounds of accident and surprise and of newly-discovered evidence.

The accident and surprise is based upon the following alleged state of facts: Upon the trial defendant testified that "Charles Swenson brought the trade about. He was agent for Nelson [plaintiff] and me."

So far as the record shows, the trial proceeded throughout upon the assumption or conceded fact of Swenson's agency for defendant.

Defendant now swears that, although he speaks and understands the English language in ordinary conversation sufficiently to transact business generally, he does not understand the meaning of a great many English words; that, when testifying, he did not correctly understand the meaning of the word "agent;" and, in substance, that he did not mean to convey the idea that Swenson was his agent in this transaction, but merely that he "had been" in some others. It would never do to grant a new trial on any such ground as this. If the defendant did not fully understand the purport and effect of his own testimony, his attorney presumably did, and al-

lowed the trial to proceed to a close without any suggestion that defendant had misspoken himself, and without any attempt to correct his mistake, if any was made.

The alleged newly-discovered evidence is equally insufficient as a ground for a new trial. It consists of alleged acts of affirmance on the part of plaintiff in treating the property conveyed to him as his own, by collecting rents of the tenants, and by attempting to trade it off. Without going into details, it is sufficient to say that this was a line of defense that would naturally have suggested itself to defendant before the trial, and called for diligence on his part in order to ascertain the facts bearing upon such a defense. But there is no sufficient showing of diligence in this regard on part of defendant. Moreover, most of the facts constituting the alleged newly-discovered evidence are denied by the rebutting affidavits on part of the plaintiff. Under all the circumstances, there was no error in refusing a new trial on this ground. The defeated party is usually apt to think that he could make a stronger case on another trial, and, in order that there be an end of litigation, new trials should be very cautiously and sparingly granted on the ground of newly-discovered evidence.

Order affirmed.

(Opinion published 55 N. W. Rep. 821.)