# NICHOLAS B. LUDOWESE v. L. H. AMIDON and Another.[1]

## January 9, 1914.

## Nos. 18,432—(260).

**Value of bank stock — documentary evidence.**

1. The books of a bank and statements of its condition made by or under the direction of its president and general manager are competent evidence tending to prove the value of the shares of stock, and furnish a basis for expert testimony in an action against the president for the rescission of an exchange of land for such stock procured by misrepresentations of the condition of the bank, and of the actual value and book value of its shares of stock.

**Rescission of contract to exchange property.**

2. An action to rescind will lie where defendant by misrepresentations of material facts, relied on by plaintiff, accomplished the deal, without proof that plaintiff was damaged.

**Material misrepresentations.**

3. Representations that the bank was not indebted related to a material fact. And representations as to actual value of its shares of stock made by its president and general manager were not mere trade talk which an intending purchaser had no right to rely on, since he could not well acquire, even by an examination of the books, the same knowledge as the president possessed of such value.

**Uncontradicted evidence.**

4. Where a fact is proven by uncontroverted testimony the reception of some testimony in the nature of legal conclusions to prove the same fact is not reversible error.

**Burden of proving purchase in good faith.**

5. Fraudulent misrepresentations being proven in an action to rescind, the

[1] Reported in 144 N. W. 965.

Note. — On the question of the right to rescind subscription to corporate stock for fraud and misrepresentation, see note in 33 L.R.A. 721. And for the measure of damages for misrepresenting value of corporate stock sold, see note in 43 L.R.A.(N.S.) 373.

The authorities on the question of possession of land by tenant as notice of title are reviewed in a note in 13 L.R.A.(N.S.) 96.

defendant, who claims title from the one guilty of the fraud, has the burden of showing himself a bona fide purchaser without notice.

**Purchase in good faith.**

6. The court found, and the proof supported the finding, that plaintiff was in possession by tenant when the defendant Rebecca received the conveyance from the defendant guilty of the misrepresentations. She made no inquiries of the tenant or of plaintiff, the landlord, as to their rights. She was ignorant of the misrepresentations having been made. Under the evidence she was not entitled to a finding that she was a good-faith purchaser without notice.

**Notice to purchaser.**

7. A tenant's possession is notice of his landlord's rights in the premises, and one who claims as a good-faith purchaser under that situation must be charged with such information as an inquiry of the landlord would have elicited.

Action in the district court for Marshall county against L. H. Amidon and Rebecca T. Amidon to cancel a conveyance from plaintiff to L. H. Amidon and one from the latter to his mother, the defendant Rebecca. The case was tried before Grindeland, J., who made findings and ordered judgment in favor of plaintiff. The court denied the motion of plaintiff and the motion of defendant Rebecca for amended findings. From orders denying separate motions for a new trial, defendants took separate appeals. Affirmed.

*A. N. Eckstrom* and *Case & Case,* for appellants.

*John A. Pearson* and *Julius J. Olson,* for respondent.

HOLT, J.

The action is to rescind an exchange of properties. Plaintiff prevailed and defendants appeal from an order denying their separate motion for a new trial.

Plaintiff, a young man of 31 years of age with limited business experience, advertised his desire to exchange land for bank stock. Defendant L. H. Amidon, the president, manager, and holder of the majority shares in Florence State Bank of Florence, South Dakota, a bank capitalized at $10,000, responded; and on August 23, 1911, plaintiff, who was living in North Dakota, went down to Florence

124 M.—19.

to investigate. Upon his second visit to the place, September 8, 1911, an agreement to trade was made and at least partially carried out. Plaintiff was to convey a farm of 320 acres in Marshall county, Minnesota, subject to $3,500 encumbrance and pay $3,400 in cash or securities in exchange for 76 shares of stock in defendant's bank, the face value of the stock being $100 a share. Plaintiff on that day delivered to defendant L. H. Amidon a deed to the land and received 46 shares of the stock. The payment to Amidon of the $3,400 and the receipt by plaintiff of the balance of the shares was left to the future. L. H. Amidon went immediately to Lake City, this state, where his mother, the other defendant, lived, and agreed to convey the farm to her for which she canceled his past-due debt of $4,500 and agreed to pay him $1,500. He was to make out and record the deed to her. He returned to Florence and on September 11, 1911, executed the deed as agreed and sent it together with the deed received from plaintiff to Marshall county for record where they were both recorded at 8:30 a. m. September 13, 1911.

It also appears that when plaintiff acquired the farm in the spring of the year it was in possession of a tenant of the former owner. This tenant remained in possession until the latter part of November, 1911, when plaintiff leased to another who took possession and has ever since occupied the land. On September 23, plaintiff claims he first learned that matters concerning the bank stock had been misrepresented. At once he returned the 46 shares received and demanded a rescission. The defendant L. H. Amidon refusing, this action was immediately begun and lis pendens filed. Because of faulty indexing by the register of deeds plaintiff failed to learn that the son had conveyed until the following summer, when Rebecca T. Amidon was made a party defendant. She claims she paid the $1,-500, the balance of the purchase price, to the son in the spring and summer of 1912 before she knew of this action, but long after filing notice of lis pendens.

The complaint contained allegations of fraud and misrepresentations as to the condition of the bank and the value of the stock, inducing plaintiff to trade. The defense was that none were made; that plaintiff fully investigated for himself and dealt with his eyes open;

and that defendant Rebecca T. Amidon was a purchaser in good faith without notice.

Upon the issues the court found, among other matters not necessary to set out, that defendant L. H. Amidon falsely represented that the bank stock was worth $125 per share, that the book value thereof was $107 per share, and that the bank was not indebted in any sum. It is found that plaintiff relied on the representations being true in making the deal, but that these were false to the knowledge of L. H. Amidon. In fact, the bank building representing part of its capital stock was mortgaged for $1,400, the bank was indebted on its promissory note in the sum of $7,000 and the value of its shares of capital stock was greatly less than $107 per share. The court also found that plaintiff returned the shares he obtained and demanded a reconveyance of the land immediately upon discovering the fraud; that the land, during all the time referred to, was in the actual possession of one John Johnson, Jr., who was, during all said time, plaintiff's tenant; and that Rebecca T. Amidon did not know of the actual fraudulent misrepresentations made by L. H. Amidon to plaintiff when the land was conveyed to her. The court directed both the deed to L. H. Amidon and the deed from him to Rebecca T. Amidon to be cancelled.

It stands admitted upon the record that the shares returned to L. H. Amidon as well as those he was to transfer have been disposed of by him and are now beyond his control. So that, even conceding technical errors in the admission of testimony, he is hardly in a position to resist rescission. But we believe the court was right in the rulings during the trial with few exceptions, and, as to these, we deem them without prejudice, because the facts to which the testimony related were established beyond controversy by other competent evidence.

We shall, however, notice generally certain alleged erroneous rulings of which appellants complain. The books of the bank and the statements of its condition for some time immediately prior to the trade, and also subsequent, were received over defendants' objection. The books and statements were properly verified as being kept or issued under the direction of L. H. Amidon. It also appeared that

those remote from September 8, 1911, tended to prove the actual condition of the bank on that date. This evidence was properly received, not only as directly bearing on the falsity of L. H. Amidon's representations, but also to serve as a basis for expert testimony as to the condition of the bank and the value of its shares of stock. That the books and statements of a bank do not alone determine the value of its stock may be conceded, for the location of the bank, the reputation of the men in charge, and other matters have a bearing. But the evidence referred to, and received, was certainly of the most reliable kind and indispensable in arriving at the value of the shares whether it be actual value or book value. It requires a good deal of assurance to assert that bank stock may intrinsically be worth more than par, when the books of the bank disclose a large depletion of its capital. The numerous assignments of error growing out of the reception of the evidence referred to, and permitting expert opinion of value based thereon, are not well taken.

The appellants are mistaken in the claim that there was no misrepresentation in regard to book value of the stock. Plaintiff testified positively that L. H. Amidon represented the book value to be $107 per share. This is also shown by Amidon's written statements. We also conclude from counsel's contention of failure of proof, made on the oral argument, that he does not bear in mind the distinction between an action to recover damages for deceit and one to rescind because of misrepresentations. In the latter a defendant cannot successfully oppose rescission if he has misrepresented a material fact, relied on by the other party in the trade, by insisting that plaintiff has not proven damage therefrom. Martin v. Hill, 41 Minn. 337, 43 N. W. 337; MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408; Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; Nelson v. Carlson, 54 Minn. 90, 55 N. W. 821; Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710.

But the contention is that the representations as to the condition of the bank and the value of the stock were mere trade talk in which a seller may indulge in exaggerated expressions of the value of the property offered for sale, without subjecting himself to actionable fraud. The assurance that the bank was not indebted, when a St. Paul

bank held its promissory note for $7,000 secured by $12,000 of its choicest paper, was certainly a misrepresentation of a material fact. So were the representations as to the value of the stock. Shelton v. Healy, 74 Conn. 265, 50 Atl. 742; Blacknall v. Rowland, 116 N. C. 389, 21 S. E. 296. The rule of caveat emptor is not decisive against plaintiff. Bank stock in one of the chief banks of our large cities may have an easily ascertained market value. But it is different with the stock in a country bank. The deals therein are infrequent, the tangible property of a bank, even if examined, especially by one not an expert, is difficult to estimate; its real value may be known only to the managing officers of the bank, or to those possessing knowledge of banking after a long examination of the books and commercial paper or credits of the bank. Plaintiff's means of knowledge of the condition of the bank and the value of its capital stock, after such examination as he did make, was not, and could not well be, the same as L. H. Amidon's, the sole manager of the bank. Nelson v. Carlson, supra; Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638; Freeman v. F. P. Harbaugh Co. 114 Minn. 283, 130 N. W. 1110; Baker v. Mathew, 137 Iowa, 410, 115 N. W. 15.

Objections to certain evidence to prove that plaintiff held possession of the farm by his tenant may have been good, on the ground that the answers called for legal conclusions. But the facts establishing such relationship were otherwise proven by undoubted competent evidence and were really not in dispute.

Upon this record plaintiff is clearly entitled to a rescission, and to restitution of the farm, provided Rebecca T. Amidon is not a good-faith purchaser without notice. She claimed to be such, and we think the burden of proof rested on her in that respect. Minor v. Willoughby & Powers, 3 Minn. 154 (225); Fritz v. Ramspott, 76 Minn. 489, 79 N. W. 520; Errett v. Wheeler, 109 Minn. 157, 123 N. W. 414, 26 L.R.A. (N.S.) 816. The situation is analogous to a negotiable instrument procured by fraud in the hands of an alleged bona fide holder. When fraud in the inception of the instrument is shown, the onus of proof is upon the holder. It is true the court found a consideration, as hereinbefore stated, and that she did not know of the actual fraudulent representations made by

her son to plaintiff when she received her deed. But the court did not find that she was a bona fide purchaser without notice of plaintiff's rights; on the contrary, the finding is that during all the time involved the land was in the actual possession of plaintiff's tenant. This was equivalent to a finding of constructive notice of plaintiff's possession and rights. There is no need of citing authorities in support of the prevailing doctrine in this country that possession is notice to purchasers of land of the possessor's rights therein and that this is applicable to a grantor who remains in possession after conveying. Teal v. Scandinavian Am. Bank, 114 Minn. 435, 131 N. W. 486. It is also well settled in this state ever since Morrison v. March, 4 Minn. 325 (422) that "the actual possession of a tenant not only protects him in the enjoyment of his term but is notice of his landlord's title." Groff v. Ramsey, 19 Minn. 24 (44); Wilkins v. Bevier, 43 Minn. 213, 45 N. W. 157, 19 Am. St. 238; Wolf v. Zabel, 44 Minn. 90, 46 N. W. 81; Groff v. State Bank, 50 Minn. 234, 52 N. W. 651, 36 Am. St. 640; see also note to Miles v. Cooper, 13 L.R.A.(N.S.) title, "American Rule," p. 100.

We think the finding that the tenant in possession of the farm was the tenant of plaintiff is amply supported by uncontroverted facts. It was admitted that the crops belonged to plaintiff, so that he was to receive the share going to the landlord under the lease. The grain had perhaps been cut, had not been threshed or divided. In June previous the tenant had been notified by the original lessor of the sale of the farm, and thereupon plaintiff visited the premises and arrangements were made under which the tenant agreed to look to plaintiff's agent as representing him as landlord. This was an attornment. In passing, it may be stated that the record is silent as to Rebecca's knowledge that plaintiff had ever owned the land, or that he had conveyed to her son, or that there was a tenant on the farm, except this, a duplicate of the lease, unassigned, had been handed to plaintiff by the original lessor, and by plaintiff to L. H. Amidon. It does not appear when this lease and the deed to Rebecca came into her possession. But knowing that this lease by its terms expired on March, 1912, she made no effort to take possession or disturb the possession of plaintiff's tenant, nor did she visit nor inquire about this valuable

farm, either herself or by agent, or seek to derive any income therefrom; nevertheless, she claims to have paid her son $1,500 in June, 1912, in ignorance of the litigation pending against him since September, 1911.

It may be urged, however, that even if she had taken notice of the tenant's possession and inquired of him she would have learned nothing of the facts which went to establish plaintiff's rights to a rescission. A purchaser is only chargeable with such knowledge as a proper inquiry would furnish. He must act reasonably, however, and cannot stop on the threshold of what would most likely lead to full information. This requires not only an inquiry from the tenant but from his landlord. Deetjen v. Richter, 33 Kan. 410, 6 Pac. 595. "The possession of land by a party, through his tenants, is notice to all the world of his rights in the premises, and without inquiry of him no one can claim to be an innocent purchaser as against him." Whitaker v. Miller, 83 Ill. 381; Mallett v. Kaehler, 141 Ill. 70, 130 N. E. 549; Dickey v. Lyon, 19 Iowa, 544.

It is true that, when the deed from the son to the mother was made, plaintiff was ignorant of the fraud practised on him, so the contention is near at hand that inquiry from plaintiff would not have divulged the rights upon which he now stands. But we must assume that such inquiry would have disclosed that he was in possession and was to receive the rent in shape of crops; that only a part of the consideration had been received from him; and that, as he testified, the delivery of the deed was conditional upon an examination of the bank by an expert, selected by him, disclosing the representations as to its condition made by L. H. Amidon to be true. She did not inquire of the son how he obtained the land. Charity forbids the thought that one who by misrepresentation and deceit takes advantage of a stranger in a deal would do the same to his own mother. In this case Rebecca T. Amidon simply shut her eyes, trusting perhaps her son to take the proper precautions. A failure to make inquiry may be "regarded as an intentional avoidance of the truth which it would have disclosed." Betts v. Letcher, 1 S. D. 182, 194, 46 N. W. 193.

Without discussing the other assignments of error we are satis-

fied from a careful examination of the same that appellants have no just grounds for complaint.

Order affirmed.