## JOSEPH HAUGER v. J. P. RODGERS LAND COMPANY. THE GUARANTEE MORTGAGE & FINANCE COMPANY, APPELLANT.[1]

June 8, 1923.

No. 23,350.

**When mortgagee neglects to ascertain title of person in possession of land.**

1. Actual possession of real property, is notice to all the world of the title and rights of the person in possession and of the facts connected therewith which reasonable inquiry would disclose. Where a mortgagee neglects to make proper inquiry to ascertain the state of the title of the person in possession, he is not a mortgagee in good faith.

**Such neglect construed as intentional.**

2. A failure, under such circumstances, to make proper inquiry, may be regarded as an intentional avoidance of the truth which it would have disclosed.

**Evidence sustains finding mortgagee was not acting in good faith.**

3. The testimony is sufficient to sustain the findings, that there was an avoidance on the part of the mortgagee, and that it was not a mortgagee in good faith.

[1]Reported in 194 N. W. 95.

Action in the district court for Yellow Medicine county to set aside a deed and to cancel a mortgage. The case was tried before Daly, J., who made findings and ordered judgment in favor of plaintiff. From an order denying its alternative motion for amended findings and conclusions or for a new trial, defendant Guarantee Mortgage & Finance Company appealed. Affirmed.

*Miller, Kelly, Shuttleworth & McManus* and *Hoke, Krause & Faegre,* for appellant.

*Gislason, Bromen & Gislason* and *J. N. Johnson,* for respondent.

QUINN, J.

Action to cancel a deed of conveyance of 319 acres of land in Yellow Medicine county, executed by the plaintiff and his wife to the defendant J. P. Rodgers Land Company, and to set aside a mortgage of $24,000 given by said land company to the defendant Guarantee Mortgage & Finance Company. The cause was tried to the court, findings of fact made and judgment ordered in favor of plaintiff. From an order denying its alternative motion for amended findings and conclusions or for a new trial, the defendant Guarantee Mortgage and Finance Company appeals.

On February 23, 1921, the plaintiff was the owner of a well-improved farm in Yellow Medicine county, worth and of the value of $150 per acre, upon which he then and ever since has resided with his family. The defendant J. P. Rodgers Land Company is a Minnesota corporation with its principal place of business in this state. The defendant Guarantee Mortgage & Finance Company is an Iowa corporation, with its place of business at Des Moines in that state.

It appears from the record and findings of the trial court that plaintiff was the owner of the farm referred to, upon which there was a mortgage of $8,000; that in February, 1921, he entered into negotiations with the defendant land company for the purpose of exchanging his farm for a tract of 840 acres in Polk county; that at that time one Ed Overvold agreed and assumed to act as agent for plaintiff in assisting him in such negotiations; that on February 20, 1921, plaintiff, in company with Overvold and an agent of the defendant land company, went upon the Polk county land for the

purpose of examining it, at which time the ground was frozen and covered with from 4 to 12 inches of snow and the weather was such that the character of the land could not be ascertained by inspection; that on February 23, 1921, plaintiff, believing that the land was of the character and kind claimed and represented by said land company, its agents and representatives, entered into an agreement to exchange properties, and at the same time the plaintiff, his wife joining, executed a deed conveying his Yellow Medicine farm to the defendant land company, which is the deed herein sought to be set aside upon the ground of fraud, as set forth in the complaint.

The Polk county land was figured into the transaction at $84,000, and the Yellow Medicine farm at $56,000, subject to the mortgage of $8,000 thereon, leaving a balance of $28,000 owing on the Polk county tract, to be paid on or before 10 years from March 1, 1921, the plaintiff to have a contract for deed, and, when the deferred payment was made in full with interest, to receive a deed conveying to him the Polk county land. As a part of the deal the land company took a lease of the Polk county tract for 2 years, agreeing to pay a cash rental of approximately $4,000 per year therefor, and the plaintiff rented the Yellow Medicine county farm for the same period. The plaintiff remained and has ever since been in full possession of the Yellow Medicine county farm. The land company and the mortgage company were at that time carrying on negotiations for a deal involving a number of farm mortgages and loans and the transferring of certain farm lands in this and other states, which they claim terminated in a contract dated March 3, 1921. In connection with that transaction the land company, on the first day of March, 1921, caused to be recorded the deed to the Yellow Medicine county farm which it had received from the plaintiff, and also executed a mortgage thereon of $24,000 to the defendant mortgage company as of that date, the same being the mortgage involved in this suit.

The witness G. N. Closz, vice-president of the mortgage company, was the only person who acted for that company in the transaction. He testified that he inspected the Yellow Medicine county farm between February 22 and March 3, 1921; that it might have been prior

to March 1; that in so doing he drove to the place and looked it over, but did not go up to the house nor see the plaintiff or any member of his family. The trial court found that the conveyance of the Yellow Medicine county farm was obtained from the plaintiff by fraud and deception on the part of the land company and that the mortgage company had constructive notice thereof and was not a mortgagee in good faith, and ordered judgment accordingly. The court further found that, at the time of the inspection of said farm by appellant, the plaintiff was in possession thereof; that appellant had knowledge of the fact that the plaintiff was the grantor of the defendant land company, but that the appellant made no inquiries of the plaintiff as to his right of possession or interest in the farm nor concerning the facts or circumstances of the transfer of it by the plaintiff to the defendant land company, and that appellant did not take nor receive the mortgage in good faith.

Upon this appeal the fraud and deception charged against the land company was found to be true and that finding is not questioned. The question presented is whether the record sustains the finding that appellant is not a mortgagee in good faith. It is apparent, as the court found, that plaintiff did not discover the falsity of the statements and representations made to him by the defendant land company nor learn the character nor value of the Polk county land until after the execution of the mortgage. Based upon its findings the court ordered that the deed from plaintiff to the land company be set aside and that the mortgage given by the land company upon the premises in question to appellant be canceled and discharged of record.

It is perfectly apparent from a reading of the testimony of appellant's representative that the court was fully convinced that the inspection was made prior to March 1, 1921. The court found that, at the time of this inspection and of the execution of the mortgage, the land company was holding the title to the farm in trust for the plaintiff, who was then the equitable owner and in possession thereof, of all of which the appellant had constructive notice. If this inspection was made prior to March 1, plaintiff was not then lessee of the farm, nor was the deed in question then of record. The person

who inspected the farm was urged by counsel to fix definitely the time of the inspection, but he avoided it by saying that it was between February 22 and March 3, and that it might have been prior to March 1. It is significant that a part of the agreeemnt between the plaintiff and the land company was that Rodgers should see to it that the plaintiff and his wife were taken to the Polk county land in June without cost to them for the purpose of inspecting the same. When asked to join in the contract and deed plaintiff's wife informed Mr. Rodgers that she had never been in the locality of the land, that she knew nothing about it, and therefore would have to rely upon their representations with reference thereto. The land company never carried out this part of the agreement, which was thereby left unfinished. If the inspector on behalf of the mortgage company had inquired of the plaintiff or his wife with reference to the transaction, he would undoubtedly have learned of such condition. ·

Actual possession of real property is notice to all the world of the title and rights of the person in possession. Also of all facts connected therewith which reasonable inquiry would disclose, and a purchaser thereof, knowing the possession to be in a third person, is chargeable with notice of such facts. Niles v. Cooper, 98 Minn. 39, 107 N. W. 744, 13 L. R. A. (N. S.) 49; see also note 13 L. R. A. (N. S.) 49. The case comes within the rule announced in Teal v. Scandinavian-American Bank, 114 Minn. 435, 131 N. W. 486, where it is held that

"The court will not spéculate in cases of this character upon what might happen or be discovered if inquiry were made, but will presume, in the absence of evidence conclusively showing the contrary, that upon inquiry the true situation and claims of the possessor would be made known. The only way of overcoming this presumption is to produce the conclusive evidence, or make the inquiry. The conclusive evidence does not appear, and as no inquiry was made, the presumption must be applied. The defendant was not, therefore, an innocent mortgagee. The rule applies with particular force to those dealing in lands with actual knowledge of the possession of some third person, as in the case at bar."

It was held in Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965, that a failure to make inquiry may be regarded as an intentional avoidance of the truth which it would have disclosed. The amount of the loan is suggestive to say the least. The first mortgage of $8,000, coupled with the amount of the one appellant received, raised the incumbrance to over $100 per acre, upon land worth but $150 per acre at the time when land in the vicinity, as contended in appellant's brief, was on the boom and when money conditions were tight.

It appears from the record that the witness Closz has had many years experience in the land business; that he knew the country and the value of lands, possessed a keen perception of every detail entering into such transactions, and, had he visited the house and made inquiry of the plaintiff and his wife, he would in all probability have learned much more about the transaction than he otherwise would, even though the plaintiff himself had not awakened to a realization of the fraud that had been practiced upon him. The testimony is sufficient to sustain the finding of the trial court that there was an avoidance on the part of the appellant and that it was not a mortgagee in good faith. In our opinion the showing made in the record does not overcome the presumption arising from the representative's failure to make inquiry of the person in possession and is not conclusive as the rule cited requires.

Affirmed.


DIBELL, J. (dissenting.)

I dissent. I am unable to agree that the plaintiff's possession was notice to the Iowa mortgage company that he was defrauded when he conveyed to the Rodgers company, a fact of which he was ignorant when the mortgage was taken and which he did not ascertain until five months later.

There is no question of actual notice to the mortgagee of the fraud practiced on the plaintiff, or of actual bad faith in taking the mortgage. Perhaps there might have been an issue on the question of actual notice; there is none here. The trial court did not find actual notice, or bad faith. It was of the opinion that because of the pos-

session of the plaintiff the mortgagee was charged with notice that he had been defrauded.

A mortgagee taking a mortgage of land in the possession of one other than the mortgagor, omitting to inquire about his claim, is charged with such notice as a fair inquiry would have disclosed. He is not an outlaw because he does not inquire; but if he does not he is charged with such notice as inquiry would have given.

That an officer of the mortgage company inspected the land some time before the mortgage was taken is not important on the question of constructive notice by possession. The date for consideration in determining whether there is notice by possession is the date when mortgage rights attach to the land. This was on or just a day or two prior to March 7, 1921.

The plaintiff traded his Renville county lands for the Polk county lands. He gave a deed on February 23, 1921, and it was recorded March 1, 1921. At the time he gave the deed he took a lease of the Renville farm, effective from March 1, 1921, for two years, but if the farm was sold before March 1, 1922, then for one year only. If the mortgage company had made inquiry of the plaintiff, it would have ascertained no adverse claim of title nor claim of fraud, for the plaintiff knew of none and could assert none. He was satisfied and uncomplaining. He first ascertained that he had been defrauded, so the court finds, not earlier than August 1, 1921. In the five months' interval he asserted no adverse title nor right of rescission for fraud. It is not the duty of a mortgagee, finding that the one in possession makes no claim against the title upon which the mortgage is to rest, to inquire into the circumstances under which he parted with his title, what he got in return, make such an investigation as will show that he was defrauded, if the fact be so, an investigation which under the facts of this case would have taken many days. The mortgagee is in no worse position than he would be had he inquired.

With the rule as to the effect of possession as notice there is no quarrel. With its application here I do not agree. The cases cited in the opinion illustrate various applications of it. The case of Mateskey v. Feldman, 75 Wis. 103, 43 N. W. 733, where the grantor remained in possession under an agreement with his grantor, for a

month and a half, before he discovered the fraud, and his grantee in the meantime gave a mortgage, is in point on its facts. The Wisconsin court goes so clearly and directly, and to me it seems so correctly to the only point involved here that the case is worthy of citation and particular consideration. Other cases cited in the mortgagee's brief are on the principle involved equally forceful and on their facts closely in point.