JAMES S. McROBERTS, Defendant in Error, *vs.* THE COMBINATION FOUNTAIN COMPANY, Plaintiff in Error.

*Opinion filed April 24, 1925—Rehearing denied June 5, 1925.*

1. FRAUD—*judgment of Appellate Court is final as to issues of fact.* The judgment of the Appellate Court affirming a judgment for the plaintiff in an action on the case in deceit is final on the issues of fact as to whether or not the representations made by the defendant were true or false and whether the plaintiff used due diligence to ascertain the truth of the statements.

2. SAME—*when contract with defendant's agent does not affect right of action.* In an action on the case in deceit for alleged false representations of the defendant's agent in the sale of the defendant's stock to the plaintiff, whether or not the plaintiff has an action against the agent on his promise to re-sell the stock at a higher price and divide the profit does not affect the right of action against the defendant, if, in fact, the plaintiff was induced to purchase the stock by false representations.

3. SAME—*when books of defendant company are admissible in evidence.* In an action upon the case in deceit for alleged false representations as to the defendant company's financial standing, whereby the plaintiff, to his loss, was induced to purchase stock in the company, the vouchers, books and documents of the company are admissible in evidence to impeach the statements made in the report to the Secretary of State and in circulars issued in regard to the stock.

4. Same—*what subsequent action is admissible to prove false representations in sale of stock.*  In an action on the case in deceit for false representations in the sale of stock of the defendant company to the plaintiff, evidence of the action of the company in charging off the stock accounts of certain stockholders, although such action took place after the alleged transaction with the plaintiff, is admissible on the issue as to whether the stock accounts of the company were actual or merely paper assets, where there is no evidence of the insolvency of said stockholders or of any effort to collect the stock accounts from them.

Heard, J., took no part.

Writ of Error to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. James S. Baldwin, Judge, presiding.

Robert P. Vail, Stanley L. Pogue, and Edgar H. Allen, for plaintiff in error.

Wiley & Morey, for defendant in error.

Mr. Justice Stone delivered the opinion of the court:

This cause comes on writ of *certiorari* to review the judgment of the Appellate Court affirming a judgment of the circuit court of Macon county in an action on the case in deceit, brought by defendant in error against plaintiff in error.  The trial resulted in a verdict for the defendant in error in the sum of $5531.94.

The suit grew out of the sale of stock by the plaintiff in error company to defendant in error, in which it was claimed that the financial condition of the company was misrepresented.  The company was organized in 1903 with a capital stock of $30,000.  This was in 1915 increased to $200,000.  In 1919 the company was in a very prosperous condition.  It appears that nineteen-twentieths of the stock of the company was held by Frank P. Howard and members of his family.  On August 28, 1919, the Howard family entered into a written contract with the company

and C. H. Beane, one of its stockholders, by which they agreed to sell to the company and Beane 1897 shares of the stock of the company for the sum of $339,546.75. By the terms of the sale $10,000 was to be paid on the execution of the contract, $54,540.75 was to be paid within sixty days, and the balance of $275,000 was to be paid in notes of the company in the sums of $5000 each, one note for that sum falling due each month. The company was to deposit as collateral, to secure its notes for the stock purchased from the Howards, notes for a like amount taken by it from its customers on the sale of soda fountains. By June 30, 1920, the notes of the company to Howard had been reduced to $240,000, but owing to the fact that the company did not at any time acquire sufficient customers' notes to cover the entire collateral required by the contract, it was later agreed that the Howards should hold the certificates of stock as collateral for their purchase price. The total amount of customers' notes deposited with the Howards as collateral was about $100,000. The capital stock of the company was later increased to the sum of $500,000 and a stock dividend declared on the stock outstanding, by means of which the number of shares of stock held by the Howards as collateral was substantially increased. In August, 1920, the company decided to sell $100,000 of its stock to the public and an application was made to the Secretary of State for leave to sell that amount, and a statement of the financial condition of the company on July 1, 1920, was at that time filed with the application. This statement showed a net earning of $99,198. At that time the company also engaged the services of N. L. Rogers, a stock salesman, for the purpose of selling the stock. Rogers, by arrangement with the company, prepared a circular respecting the financial condition of the company, which he put out under the name of "N. L. Rogers Sales Organization." The statement made in the circular was that the company was doing a large and lucrative business, and that by rea-

son of the growth of its business it needed additional working capital; that its net profits for the year ending June 30, 1920, were $99,198; that its total assets were $832,802.37; that its total liabilities were not to exceed $525,404.37, leaving net assets of $307,398; that it had over $230,000 in notes receivable and over $301,000 in accounts receivable due from trade debtors, and that all notes and accounts were good and collectible; that none of them were pledged, discounted or assigned. It stated also that it had $285,000 in treasury stock, of which it was selling $100,000, and that since July 1, 1920,—the date of the statement to the Secretary of State,—it had increased its assets and decreased its liabilities. Shortly after the issuance of this statement and circular Rogers approached defendant in error, who is a mail carrier in the city of Decatur, and proposed to sell him stock in the company. Rogers had a number of interviews with defendant in error and gave him a copy of the circular referred to and called his attention to the various statements contained in it. Defendant in error finally agreed to buy twenty shares and pay for it in Liberty bonds in the sum of $2000. He signed a stock subscription and received a receipt for it, later taking up the stock with his check and retaining the Liberty bonds. Rogers thereafter interviewed defendant in error a number of different times to sell him more stock, and finally told him he was going to make an application to the Secretary of State for leave to sell this stock at $125 per share instead of $100 per share, and that if defendant in error would furnish money for stock at par before the change in the sale price occurred, he could hold the stock as collateral and Rogers would sell it within a certain limited time at the advanced price and the two would divide the profits made by the arrangement. Defendant in error thereupon purchased thirty shares more of the stock and paid for it largely with Liberty bonds.

The declaration set out the representations of the plaintiff in error company, alleging that they were false and that they were relied upon by the declarant. Pleas were filed denying the allegations of the declaration. A trial was had on the issues made, and the verdict herein referred to was rendered. The issue of fact involved in the case was whether or not the representations made by plaintiff in error were true or false. The Appellate Court affirmed the judgment. The issues of fact are therefore not open for review here.

Plaintiff in error urges that there was not sufficient evidence in the record to support the verdict and that a verdict for it should have been directed. There was evidence tending to show that at the time the statement was made and circulars issued the company was not doing a large and lucrative business but that it was selling some of its capital stock to pay on the notes which it owed the Howard family, a number of which were due and on which demand for payment was being pressed. There is also evidence tending to show that the statement that the company had made a profit of $99,198 the year before was not true; that this profit was shown by items of stock accounts of Beane and other stockholders, which, as a matter of fact, were not profit; that these accounts, which the evidence shows amounted to over $150,000, were later charged off as worthless. There is also evidence in the record tending to show that the statement as to the accounts receivable from trade debtors was not true; that the notes of customers at no time amounted to more than $100,000, and that the statement as to this item included the stock accounts referred to, which were not trade debtor accounts. The statement also shows that none of the company's notes were pledged, but the record shows that $100,000 of customers notes were pledged to the Howard family for the purchase of the Howard stock. There is evidence also tending to show that the statement of the company's total assets is not true; that

instead of its assets being of a total net worth of $307,398, they were, in fact, worth but $61,304.11. We have referred to the presence of such evidence in the record not for the purpose of weighing the evidence, as that matter has been settled by the Appellate Court, but because such evidence shows that plaintiff in error was not entitled to an instruction for it on the trial of the cause.

The plaintiff in error contends that the evidence shows that defendant in error did not act promptly upon the discovery of the fraud. It appears that a re-organization of the company was had in February, 1921, by which Howard, who had upon the sale of his stock withdrawn as an officer, was returned as president of the company, and he released the contract of sale of his stock and the customers' notes held as collateral and took the stock back. The secretary of the corporation sent out notices of the stockholders' meeting at which this re-organization took place. Defendant, in error testified that he did not receive one of these notices but stated that he did give a proxy to Howard at the time of the meeting, and it is contended that having given this proxy he participated in the affairs of the company, and therefore did not act with reasonable promptness in seeking a rescission of the sale of stock to him. Defendant in error testified that he did not know of the untruth of the statements or the condition of the company until some time after this meeting. Whether or not he used due diligence was a question of fact, and it is not contended that plaintiff in error was not given the benefit of a trial of that issue before the jury.

It is also contended that in making the second purchase of stock, amounting to $3000, defendant in error did not rely on the statements of the agent of plaintiff in error, Rogers, as to the financial condition of the company, but was induced to make this purchase solely on the promise of Rogers that he would sell the stock at $125 per share and divide the profits with him. While the evidence shows

that Rogers did so offer, it does not follow that defendant in error was not also induced to accept the stock by reason of the representations in the statement and circulars issued by the company. Whether he has a right of action against Rogers for his failure to re-sell the stock at a higher price does not affect his right of action against the company for false representations as to its financial standing.

It is also contended that the court erred in admitting certain books and documents of the company to impeach the verity of the statements to the Secretary of State and in the circular as to the financial condition of the company. We see no error in this. The vouchers, books and papers were parts of the records of the company. If they did not speak the truth no one knew it better than the officers of the company; if they did speak the truth and did impeach the statements made to the Secretary of State and in the circular issued they were competent for that purpose. It was not error to admit them.

It is contended that the court erred in instructing the jury. The fourth instruction given on behalf of defendant in error is objected to on the ground that it does not limit the proof of fraud to the fraud alleged in the declaration. This instruction was as follows:

"In a civil action like the one at bar the party alleging fraud is not bound to prove its existence beyond a reasonable doubt. It will be sufficient if the fact is established in the minds of the jury by the weight and preponderance of the evidence only. It is not necessary that the proof should be such a character as would warrant the conviction of the defendant in a criminal prosecution for false and fraudulent representations."

This instruction defined the quantum of proof and did not direct a verdict. It should have limited the proof of fraud to that alleged in the declaration. We are of the opinion, however, that the giving of the instruction does not amount to reversible error.

It is also urged that the court erred in refusing certain instructions offered by plaintiff in error. We have read the instructions given and refused, and in so far as the latter present correct propositions of law they have been covered by other instructions in the case. We are of the opinion that there was no reversible error in the giving or refusing of instructions.

Much of counsel's brief is devoted to argument of the facts. As we have stated, that matter has been settled by the Appellate Court and is not open for review here.

It is urged that the court erred in admitting evidence of the action of the company in charging off the stock accounts of Beane and other stockholders, as this action was not taken until long after the transactions between it and defendant in error. There is no evidence of the insolvency of these stockholders or of any effort to collect these stock accounts from them. The act of the company in charging off the accounts was therefore competent evidence on the issue as to whether the stock accounts were actual or merely paper assets.

Plaintiff in error also complains that the judgment is shown to be excessive by the sum of $66.03. The second block of stock purchased by defendant in error was paid for largely by Liberty bonds. While it is not apparent as to just how the jury arrived at the verdict, it is possible that they considered the question of the value of the Liberty bonds with interest accruing thereon. We are unable to see that the verdict is not within the range of the evidence.

We are of the opinion that there is no reversible error in the record, and the judgment of the Appellate Court will therefore be affirmed.    *Judgment affirmed.*

Mr. Justice Heard took no part in this decision.