BESSIE WATSON v. CHARLES W. GARDNER AND OTHERS.[1]

April 17, 1931.

No. 28,262.

[1]Reported in 236 N. W. 213.

234

*William E. G. Watson* and *Edmund T. Montgomery*, for appellants.

*M. H. Boutelle, A. H. David,* and *James I. Best,* for respondent.

OLSEN, J.

Defendants appeal from a judgment in district court.

Plaintiff sued to recover damages for fraud in the sale to her by Charles W. Gardner of shares of stock in the Bankers Mortgage Loan Company, hereinafter referred to as the mortgage company, and to have set aside as fraudulent against creditors certain deeds of real property made by Gardner and his wife to E. Valentine Gardner, their son, and deeds of the same property by the son back to Mrs. Gardner. Plaintiff prevailed and recovered judgment for damages and for setting aside the deeds mentioned as fraudulent as to creditors.

Error is assigned upon the reception in evidence of the books and records of the mortgage company and the books and records of two small banks controlled by that company. The fraudulent

representations in question had reference to the financial condition of the mortgage company at the time its shares of stock were sold to plaintiff. It was necessary to ascertain what, if any, value this stock had at the time of the sale. The mortgage company owned a controlling stock interest in each of the two banks mentioned, and this stock constituted some 50 per cent or more of the assets of the company. Defendant Charles W. Gardner was the president of all three corporations. The stock sale to plaintiff was made in August, 1924. In September, 1926, the two banks and the mortgage company failed, and all were taken over by the superintendent of banks for liquidation. Their books and records, as well as their assets, at that time came into the possession of the superintendent of banks and have since so remained. The books and records in question were produced by employes of the banking department and were shown to be the books and records taken possession of by the superintendent as the books and records of these corporations. We assume that the books and records themselves indicate what they purport to be. It is urged that further foundation should have been laid by calling the persons who had made the entries and proving the correctness of the entries by such witnesses; that the same proof should have been made as in the case of the books of a merchant or shopkeeper in proving an account in his books.

The shop book rules do not have much application here. Reports and records kept by corporations in the regular course of their business are now very generally received in evidence, and the sufficiency of the foundation laid therefor is largely within the discretion of the trial court. Swedish-Am. Nat. Bank v. C. B. & Q. Ry. Co. 96 Minn. 436, 105 N. W. 69; Strand v. G. N. Ry. Co. 101 Minn. 85, 111 N. W. 958, 112 N. W. 987; M. & D. Cattle Co. v. C. & N. W. Ry. Co. 108 Minn. 470, 122 N. W. 493; Kitman v. C. B. & Q. R. Co. 113 Minn. 350, 129 N. W. 844; State v. Virgens, 128 Minn. 422, 151 N. W. 190; Di Vita v. Payne, 149 Minn. 405, 184 N. W. 184; Thoele v. Lavallee Law Book Co. 155 Minn. 340, 193 N. W. 469; Perkins v. C. M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758; Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922.

The shop book rule is considered and its application defined in Tiedt v. Larson, 174 Minn. 558, 219 N. W. 905.

Banks and financial corporations subject to the supervision of the superintendent of banks are in a different class from other corporations. They must make official reports from their books to the superintendent, and their books and records must be examined by bank examiners at frequent times. By G. S. 1923 (2 Mason, 1927) § 7675, they are required to keep correct books and accounts and are made subject to a penalty in case of failure so to do. This should sufficiently safeguard their books and records so as to entitle them to be received in evidence. In Taylor v. Mitchell, 80 Minn. 492, 83 N. W. 418, and Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965, it is held that such books are competent evidence to show not only the falsity of representations as to the condition of the corporation, but also as a basis for expert testimony as to the condition of a bank and the value of its shares. Bacon v. U. S. (C. C. A.) 97 F. 35, holds, as to national banks, that because the law in effect enjoins such banks to keep correct books it was not necessary to fortify the presumption following therefrom by additional proof, where the books were produced and shown to be the regular books of the bank. See also Ensign v. Pennsylvania, 227 U. S. 592, 33 S. Ct. 321, 57 L. ed. 658; McRoberts v. Combination Fountain Co. 317 Ill. 165, 147 N. E. 785.

The evidence in our present case was sufficient to justify the court in holding that these books and records were the books and records regularly kept by the corporations in question, and it was not error to receive them in evidence.

■ One Danielson, a public accountant, testified as to his examination of the books and records of the corporations and gave summaries and computations made by him therefrom. He had made no independent examination as to the actual value of the assets and did not assume to know or give his opinion as to actual values. He did give some tentative figures and estimates as to possible values, based on the time that obligations had run without payments and the failure of either the corporations or the superintend-

ent of banks to be able to realize or collect thereon. The court had before it the books and records in question and the subsequent history of the liquidation, and we do not find any error in receiving the testimony of Danielson. The foundation for such evidence is within the discretion of the trial court.

■ It is urged that the evidence as to the value of assets related to a time too remote from and subsequent to the fraud charged. But the court received the evidence for such bearing as it had upon the value of the assets at the time of the sale of the stock to plaintiff, and its findings are as to the value at that time. In cases of fraud the evidence is liberally admitted and may take a wide range. Evidence of facts logically tending to throw light on the issues is admissible. The trial court has a large discretion. Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965; Klaveness v. Freese, 33 S. D. 263, 145 N. W. 561; Hindman v. First Nat. Bank (C. C. A.) 112 F. 931, 57 L. R. A. 108; Palmer v. Bratager, 41 S. D. 649, 172 N. W. 507.

■ The plaintiff, a married woman, did not testify. Her husband testified that he conducted all the negotiations and made the purchase for his wife. There was sufficient evidence of agency.

■ Consequently there is no direct evidence by plaintiff that she relied upon the representations made. The husband testified that he relied thereon in making the purchase for his wife and that he had communicated the representations to her. While it is necessary that the representations should be relied upon, it does not seem that such reliance must be proved by direct testimony of the party defrauded. The testimony of a party that he relied upon representations made to him is at most only a statement as to his own mental reaction or state of mind. While he may directly so testify, such facts as intent, belief, and reliance are perhaps more cogently shown by the facts and circumstances surrounding a transaction and the acts of the parties in relation thereto. The rule that fraud cannot be presumed does not mean that fraud may not legitimately be deduced from circumstantial evidence. 12 R. C. L. 426; Burch v. Smith, 15 Tex. 219, 65 Am. D. 154, and note. Fraud is frequently proved, in part at least, by circumstantial evidence.

The facts and circumstances shown here were such as to justify the court in finding that plaintiff relied upon the representations made.

■ Plaintiff paid for the stock purchased by giving her notes therefor. These notes are outstanding and are in the hands of the superintendent of banks. The record in this case in the trial court shows that the action was commenced by attachment against the real estate before referred to and the publication of the summons, defendants then being nonresidents of the state; that defendants did not answer within the time allowed; that thereupon a default judgment was obtained, execution issued and levied, and the land sold thereunder; that plaintiff made some agreement with the superintendent of banks whereby it was agreed that the money received from the sale of the land, if sufficient, should be paid over to him and applied as payment on plaintiff's notes. Before this could be carried out, apparently defendants appeared and moved to have the default judgment vacated and set aside and to be permitted to answer. The court granted the motion and vacated the default judgment and the execution and sale thereunder and granted leave to defendants to answer. It is not shown that any money from this execution sale was ever received by the superintendent of banks or applied on the notes. Defendants offered the record of the default judgment and execution sale in evidence, and objection thereto was sustained. Other evidence along the same line was excluded. We fail to see that defendants could have been benefited by this evidence if admitted. It is suggested that the land may have been sold to a bona fide purchaser. The evidence is silent as to that, and we are not concerned therewith. There was no error in the rulings.

■ There are a number of other assignments of error as to rulings admitting and excluding evidence. They have been examined. We find no reversible errors therein.

The findings of fact are challenged as not sustained by the evidence. We find them fairly sustained and that they sustain the conclusions of law.

Judgment affirmed.