No. 23,635.

L. M. ROOME, *Appellee,* v. THE SONORA PETROLEUM COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Findings at Variance with Pleadings—Instructions.* A judgment should be reversed where it is rendered on a verdict based on a finding of fact contradictory to the pleadings and the instructions.

2. SALE—*Oil and Gas Property—False Representations—Damages.* Damages caused by a representation, false in fact, but believed to be true by the one making the representation, may be recovered if made to induce the damaged person to part with his money or property, where the representation is made without actual knowledge of its truth or falsity.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed July 8, 1922. Reversed.

*Charles D. Welch,* of Coffeyville, and *A. V. Roberts,* of Wichita, for the appellant.

*W. B. Grant, S. H. Piper,* and *Charles D. Shukers,* all of Independence, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff prosecuted this action to recover a balance due him on the purchase price of oil and gas property and of casing sold to the defendant. Judgment was rendered in favor of the plaintiff, on each item, and the defendant appeals.

Special questions were answered by the jury as follows:

"1. Do you find that the plaintiff represented to the defendant that the two wells upon the leases in controversy were, on August 15, 1917, the date

of the contract, making sixty-six barrels of oil per day as shown by the pipe line runs? A. No.

"2. Do you find that the oil from the two wells in controversy was being run into the pipe line during the month of August, 1917, and if so for what part of said month? A. No.

"3. Do you find that there were in existence any pipe line runs showing what the two wells in controversy were making August 15, 1917? A. No.

"4. How much oil per day do you find that the two wells in controversy were producing on August 15, 1917, as shown by the pipe line runs? A. None.

"5. How much oil per day do you find that the two wells in controversy were capable of making or producing on August 15, 1917? A. No conclusion can be made from evidence.

"6. Were said two wells making or capable of making less oil on August 15, 1917, than sixty-six barrels of oil per day, and if so, how much less? A. No conclusion can be made from evidence."

1. The defendant complains of the first finding of the jury. The written contract for the sale of the oil and gas property contained the following:

"It is represented by first party that the two wells now on said lease as shown by the pipe line runs, are making sixty-six barrels per day, and he agrees to furnish statement from the pipe line company to accompany the other papers, showing said fact."

The contract was dated August 15, 1917. The quoted provision of the contract was a representation. It was even more; it constituted a warranty on which the defendant could recover the damages sustained by reason of its failure unless prevented by binding admissions of the parties heretofore made.

The court instructed the jury—

"That it is admitted by the plaintiff herein, that the plaintiff represented to the defendant 'that the two wells now on said lease as shown by the pipe line runs, were making sixty-six (66) barrels of oil per day' and that plaintiff agreed to furnish statements from the pipe line company showing said fact."

The jury found directly contrary to the statement contained in the contract and to the instruction of the court. That finding and the verdict based on it cannot stand.

2. Complaint is made of instructions. The defendant pleaded that it had been induced to enter into the contract for the purchase of the property by the fraud of the plaintiff; that the plaintiff represented to the defendant that the property purchased had two oil wells on it making sixty-six barrels of oil a day. The defendant further alleged that the two wells were not making sixty-six barrels of oil a day and that the wells were making less than half that

Roome v. Petroleum Co.

amount. The defendant alleged that it had sustained damages in the sum of $15,000 by reason of the fraud of the plaintiff in making the false representation. There was evidence to show that the two wells would not produce more than thirty barrels a day and even much less. The court gave the following instructions:

"6. You are instructed that the general rule is that to constitute actionable fraud it must appear that the party charged with fraud made a material representation and that it was false, that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth and as a positive assertion, that he made it with the intention that it should be acted upon, that the party would act and rely upon it and that he suffered injury thereby, each and all of these facts must be proved with a reasonable degree of certainty and all of them must be found to be existing and the absence of any one of them is fatal to recovery on the part of the defendant in this action."

"9a. You are further instructed that fraud can only be predicated upon a dishonest motive, therefore if you should find from the evidence that the plaintiff did in fact represent that the wells were making 66 barrels per day and believed what he was stating was true from information that he then had. then such representation would in no event constitute fraud."

"11. You are further instructed that it is a positive rule of law that an intent to deceive or, as commonly expressed, a 'fraudulent intent' is an essential element of every actionable fraud and before the defendant can recover in this action on the ground of fraud, you must be satisfied by a preponderance of the evidence that at the time the representations of the plaintiff were made, if any, they were made by him with the fraudulent intent to deceive the defendant."

Other instructions were given in harmony with 9a and 11. The sixth instruction correctly stated the law of fraud. Instructions 9a and 11 were erroneous for the reason that they gave undue prominence to dishonest motive in making false representations. False representations, if they result in damage to the person to whom they are made, are injurious whether made through honest or dishonest motives, and the damage sustained can be recovered if the representations are made with the intention of inducing the injured person to part with his money or property. In *Bank v. Hart,* 82 Kan. 398, 108 Pac. 818, the following language was used:

"False representations are actionable when made fraudulently—that is, to induce another to part with his money or property—if believed and acted upon and made with knowledge of their falsity, or when made for such purpose by one who has no knowledge upon the subject but who intends to convey, and does convey, the impression that he does have actual knowledge that they are true, and thereby deceives the other to his injury." (Syl. ¶ 1.)

This language was quoted in *Rucker v. Allendorph,* 102 Kan. 771,

Bank v. Troutman.

773, 172 Pac. 524. In *Bice v. Nelson,* 105 Kan. 23, 180 Pac. 206, 181 Pac. 558, it was held:

"In this state, false statements of fact, made by a seller to induce a sale and relied on by the buyer, are actionable, without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive." (Syl. ¶ 4.)

The pleadings showed that a false representation was made. There was abundant evidence to show that the representation was not true. The instructions of the court were misleading.

For these reasons, the judgment is reversed, and a new trial is directed.