## No. 32,308

R. E. SLUSS, *Appellee* and *Cross-appellant*, v. THE BROWN-CRUMMER INVESTMENT COMPANY, *Appellant.*

(53 P. 2d 900)

Opinion filed January 25, 1936.

*Karl M. Geddes,* of El Dorado, *Thomas E. Elcock, James G. Martin, J. H. Fugate* and *A. B. Huguenin,* all of Wichita, for the appellant.

*J. B. McKay,* of El Dorado, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *William E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to rescind the sale of certain municipal bonds and warrants and to recover the purchase price on account of false representations. The action involved nine transactions. As to some of the transactions, the jury found for plaintiff. On the others the jury found for defendant. Judgment was rendered in accordance with the verdict of the jury. Both parties appeal.

The transactions involved were the sale of the following bonds: Royal Oak drain district, Oakland county, Michigan, $5,000; general fund refunding warrants, Hidalgo county, Texas, $3,000; road bonds, road district No. 1, Hidalgo county, Texas, $22,000; city of

Ocoee, paving bonds, Florida, $13,000; drainage subdistrict No. 4, of Grassy Lake and Tyronza drainage district No. 9, Mississippi county, Arkansas, $5,000; water plant revenue bonds, Series B, Corpus Christi, Texas, $8,000; and drainage district No. 7, Poinsett county, Arkansas, $6,000.

These sales took place at different times, as will be hereinafter noticed. There were three separate sales of the Ocoee bonds. Each sale was treated by itself in the petition.

The plaintiff was a farmer living in Butler county. The defendant makes a business of dealing in municipal bonds and mortgages. The case was submitted to a jury. The jury found in favor of plaintiff on the causes of action based on the sale of the Royal Oak drain-district bonds, the Hidalgo county refunding warrants, the seven $1,000 bond items of the city of Ocoee, Florida, the one $1,000 bond item of the city of Ocoee, Florida, the five $1,000 bond items of the city of Ocoee, Florida, the Corpus Christi, Texas, water revenue bonds.

The jury found for the defendant on the causes of action based on the sale of the Hidalgo county road district bonds, the Mississippi county drainage district, Arkansas, item and the Poinsett county, Arkansas, drainage district bonds.

We will dispose first of the appeal of the defendant from the judgment against it.

The defendant argues first that it was entitled to judgment on the special questions notwithstanding the general verdict as to the sale of the Royal Oak bonds and the Corpus Christi bonds. Defendant points out in this connection the answer to special question number 4. In that question the jury was asked what the false representation was that induced plaintiff to buy the bonds. As to these two issues, the answer was "legal and valid." Defendant argues that no such a representation was alleged in the petition to have been made and that such a finding acquits the defendant of any false representation. We will discuss the latter question first. We must notice the answer of the jury to question number 7 in order to understand this argument. In that question the jury was asked what, in substance, the agent of defendant represented to plaintiff at the time the several sales were made. The answer as to the sale of the Royal Oak and the Corpus Christi bonds was "That this issue is legal and valid and a high-class security as good as any Kansas bond." It

will be noted that this question asked for all representations while question number 4 asked for all false representations. The several answers to special questions should be construed together so as to harmonize with the general verdict where possible. (See *Greiner v. Greiner*, 129 Kan. 435, 283 Pac. 651.) In this case the jury found in answer to one question that the false representation that was made was that these two issues were "legal and valid." In answer to another question it found that a representation that was made was that these two issues were legal and valid and a high-class security as good as any Kansas bond.

The jury would not have found that the representation as to these two being a high-class security and as good as any Kansas bond was not false if it believed that the statement that they were legal and valid was false. If the jury believed that the bonds were not legal and valid then it could not have believed that they were a high-class security. This conclusion makes it unnecessary to consider the argument of defendant that there was no allegation that defendant represented these two issues were legal and valid and no proof of the allegations had ever been made.

Defendant next argues that the false representations alleged were not actionable. The allegations of false representations as to each sale were substantially the same. They were as follows:

"That said bonds were as safe and sound for investment purposes as any Kansas municipal bonds; that they were gilt-edge securities; that the defendant had experts in its employ investigate said bonds thoroughly and carefully, and that defendant had been in close contact with and made a special study of all matters pertaining to the origination, issuance and distribution of municipal bonds, warrants and securities and was competent and qualified to determine and pass on the validity and legality of all municipal bonds, warrants and securities and that said bonds were legal, valid and subsisting obligations of the city of Ocoee, county of Orange and state of Florida, and that they constituted as safe an investment as plaintiff could make. . . .

"In order to induce plaintiff to believe and rely thereon and to continue a customer of defendant and to purchase said bonds and to prevent any independent inquiry or investigation by plaintiff and with the fraudulent intent of breaking its promises and agreement, if called on to make the same good, orally again promised and agreed that with respect to said bonds as well as with respect to any securities theretofore purchased by plaintiff from the defendant, the defendant would repurchase the same on plaintiff's demand for an amount equal to the original purchase price with accrued interest to date of such repurchase. . . ."

The argument of defendant is that the statements that the bonds were "gilt-edge" and were "safe and sound" and "as good for an investment as any Kansas municipal bond" were not statements of an ascertainable fact, but rather were matters of opinion and as such were not actionable. It should be stated here that the jury found for the defendant on the allegation that the agreement to repurchase was made with the intention of breaking it. We have here at this time only the question of whether the statements alleged, which have already been referred to, were actionable.

The petition in this case and the evidence discloses a course of dealing extending over several years and covering several transactions. Under such circumstances we must consider all the representations with the idea that the determining factor is the combined effect of all the statements on the plaintiff's mind.

"'Fraud is one of the broadest issues known to the law, for it can seldom be proved by direct evidence, but is dependent upon circumstances which, separately considered, may be quite immaterial, but when combined are not only material, but have great persuasive force.'" (*First Nat. Bank v. Miller,* 163 N. Y. 163, 167; 57 N. E. 308.)

This was quoted and approved in *Churchill v. St. George Development Co.,* 160 N. Y. S. 357. To the same effect is the holding of the court in *Crook v. Ford,* 249 Mich. 500, 229 N. W. 587. There the court said:

"As a rule there are many factors which induce one to enter into a contract. A fraud results from a fraudulent statement, if the erroneous belief caused by the statement is a material contributing factor in deciding the other party to enter into the contract." (p. 505.)

See, also, *Stewart v. Wyoming Ranche Co.,* 128 U. S. 383, 9 S. Ct. 101, 32 L. Ed. 439.

We will not dwell at length upon the evidence offered by both parties as to the meaning of the phrase "gilt-edge" when used in speaking of bonds. The question with which we are concerned is, What was the effect produced upon the mind of plaintiff by its use under the circumstances we have here? When that test is applied we conclude that the effect thus produced was to cause plaintiff to believe that the bonds in question were much better bonds than they really were. We hold that the representations charged to have been made were actionable.

The next argument of defendant is that the findings of the jury were in favor of defendant on all charges of fraud pleaded in the

petition. The argument is based on the fact that the trial court submitted the case to the jury on an instruction that the false representations charged in the petition were that bonds were gilt-edge securities, that they were as safe and sound for investment purposes as any Kansas municipal bond, together with the allegation about the repurchase agreement, as to which the jury acquitted defendant. Defendant points out that the jury found the false representation made was that the bonds were high class and as good as any Kansas bond. The argument is that the allegation "as good as any Kansas municipal bond" was not actionable, and since the jury did not find that the defendant represented that the bonds were "gilt-edge" the finding amounted to an acquittal of the fraud pleaded. Such a rule would impose too great a burden on the jury. A jury is not composed of men skilled in the discernment of the fine distinctions between the meaning of words. The words "high class" and "gilt-edge" are so nearly synonymous that the jury might well have used them interchangeably. The special findings must be construed together with the general verdict so as to uphold the general verdict wherever possible. When this is done we have no trouble in holding that the answers to the special questions indicate the jury in answering them believed the facts existed sufficient to support the general verdict. It is not necessary for the plaintiff to prove nor for the jury to find that the exact language used in the pleadings was in fact used by the defendant. (See *Maidment and Maidment v. Frazier*, 90 Vt. 520, 98 Atl. 987.) There the court said:

"It is not necessary that the exact language of the representations as set out in the declaration, should be proved. There is no material variance if the representations be proved substantially as alleged." (p. 525.)

What the plaintiff wished to buy was bonds as good as the Kansas bonds he was selling. This court is not impressed with the argument that the bonds sold were worth 100 cents on the dollar at the time they were sold. The plaintiff was looking for a safe investment for his funds. He was not interested in the technical difference in bonds as argued by defendant. If a bond had infirmities in it at the time it was sold which were bound to result in the bond eventually being worthless or at the most worth only a few cents on the dollar the plaintiff did not want it. In this case there were bonds issued by bankrupt municipalities, in some cases poorly secured, in other cases inferior to other liens, so that the payment

of them was made impossible or put at a time far in the future. The defendant knew or should have known these things. The plaintiff stated that he did not know and had no means of knowing the facts which he now says were misrepresented. On the other hand, the defendant did have the means of obtaining this information. In some cases, indeed, the agent of defendant testified that he had such information. Under such circumstances frequently courts have held a statement which under other circumstances would be an opinion to be a misrepresentation of a fact. In *Abmeyer v. Bank,* 76 Kan. 877, 92 Pac. 1109, this court said:

"It is contended that the representations of Wright, if false, were mere matters of opinion, which cannot be regarded as fraudulent. Ordinarily the expression of an opinion or belief by a vendor as to quantity or value, although false, is not a basis of action or ground of relief. Where, however, the parties do not stand upon a basis of equality—where the vendor assumes to have knowledge and asserts an opinion upon a matter of which the vendor [vendee] is ignorant, and the misrepresentations are made with intent to deceive, the vendee who relies upon and is injured by them is not without remedy." (p. 879.)

See *Stevens v. Allen,* 51 Kan. 144, 32 Pac. 922. See, also, 1 Quindry on Bonds and Bondholders, pp. 96, 98, sec. 61; *Shriver v. National Bank et al.,* 117 Kan. 638, 232 Pac. 1062, and *McDonald v. Smith,* 139 Mich. 211, 102 N. W. 668.

We hold that the argument of defendant that the jury's findings acquitted appellant of all fraud charged by plaintiff, that the representations found by the jury to have been made are not actionable, and that the representations found by the jury are not legally equivalent to the representations pleaded, is not good.

The defendant next argues that the plaintiff as a matter of law was not entitled to maintain an equitable action in rescission. This argument is based upon the fact that plaintiff filed this action originally on March 12, 1932. He had served a demand for repurchase on defendant on February 20, 1932. The petition in that case set up every ground of fraud which was submitted to the jury in this case as a ground for rescission and joined with these allegations of fraud an action to recover on an asserted repurchase agreement. Defendant argues that plaintiff thereafter resisted the efforts of defendant to force an election on the part of plaintiff from March 12, 1932, until the 22d day of August, 1933, when the amended petition on which this trial was had was filed. The facts are that the original petition in this case was filed on March 12, 1932. When that action was filed defendant filed a motion to quash the summons,

motions to strike, motions to require plaintiff to separately state and number, and finally a demurrer to the petition. These were all overruled, and defendant appealed. This court reversed the trial court on the motion to separately state and number, on the motion to make definite and certain, and on the demurrer. These rulings were all on the same point, that is, this court held that it was not plain from the petition whether plaintiff was suing and relying on the contract for repurchase, or suing for damages on account of fraud, or suing for a rescission. It was held that an action must be based on some definite legal theory. (See *Sluss v. Brown-Crummer Inv. Co.,* 137 Kan. 847, 22 P. 2d 965.) After the decision in that case the plaintiff filed the amended petition upon which the trial was had which we are now discussing. In that amended petition the plaintiff alleged fraud and prayed for a rescission and for damages. We see in the record of the case of *Sluss v. Brown-Crummer Inv. Co.* nothing more than the ordinary case of two parties vigorously contesting every step in a lawsuit. It is true that seventeen months elapsed while the former action was reaching a decision in this court. We cannot see, however, where the delay could be fastened on plaintiff or where the defendant was damaged by it.

So far we have discussed various arguments of defendant wherein it is claimed that the trial court committed errors which require a judgment for defendant.

We will now discuss errors which defendant argues entitle it to a new trial. The first error of which defendant complains under this head is the refusal of the court to submit the following special question requested by defendant:

"6. With respect to any transaction on which you allow recovery give in detail with respect to each such transaction on which you allow recovery, what you find induced plaintiff to purchase the securities.

"Answer: Description of issue: Statement of what induced purchase:"

The question was an attempt on the part of defendant to cross-examine the jury. This is not permitted. In *Doty v. Crystal Ice & Fuel Co.,* 122 Kan. 653, 253 Pac. 611, this court held:

"The trial court has discretionary supervision of the form and nature of special questions which may be submitted to a jury, and may properly refuse to submit questions which are highly technical, or which are not focused on the ultimate facts of the matter in issue, or which are designed merely to recapitulate the evidence rather than to determine the facts proven by the evidence." (Syl. ¶ 1.)

See, also, *Ladd v. Railway Co.*, 97 Kan. 543, 155 Pac. 943. The court instructed the jury that the false representations must have induced the defendant to purchase the securities. In order for the jury to have found generally for the plaintiff it must have believed that the false representations induced the plaintiff to make the purchase. We conclude that the proffered question was an improper one.

Defendant next argues that there was a failure of proof of the allegations of fraud. This argument is based on the fact that the allegation in the petition was that defendant represented that the bonds were "gilt-edge" and as "safe and sound as any Kansas bond," while the jury found the representation was made to be that the bonds were "high class" and "as good as any Kansas bond." This argument has already been disposed of in this opinion.

Defendant next argues that it was error for the trial court to admit evidence as to the value of the bonds at the time of the trial because it was too remote from the time of the sales. The court instructed the jury that such evidence could only be considered by it insofar as it tended to prove that the bonds were or were not such bonds as they were represented to be at the time of sale. Plaintiff was buying bonds for a long-time investment. Defendant knew this. In *Paul v. Cameron*, 127 Neb. 510, 256 N. W. 11, the court considered a similar question. There the court said:

"Defendants also contend that subsequent events must not be taken into account in determining the value of the bonds in suit as of the date of the alleged fraudulent sale. And, on this ground, objections were originally made to the introduction of evidence relating to the default in payment of the rent and the forfeiture of the 99-year lease, and the subsequent insolvency of the obligor of the bonds purchased, and the fact that at the time the present action was instituted such bonds were worthless. The evidence in the record is without dispute that the bonds were purchased by plaintiff for investment, and held as such until the bankruptcy of the Keystone Investment Company and likewise of the Peters Trust Company culminated. Under these circumstances, the approved rule appears to be that, in ascertaining the measure of damages, where bonds have been sold by fraudulent representation for the purpose of investment, it is competent to take into consideration, in ascertaining the true and intrinsic value of such bonds, subsequent events such as the history of the company, the winding up of its affairs, and all other facts and circumstances throwing light upon the real and true value of the bonds at the time the same were sold." (p. 519.)

The fact that the bonds in nine different cases turned out bad is a strong circumstance to prove that the bonds were not what they

were represented to be. In *Cramer v. Overfield*, 115 Kan. 580, 223 Pac. 1100, this court held:

"The court adheres to its prior decisions where the sale of corporate stock is affected by false pretenses the price paid is some evidence of what the value would have been if the representations had been true; and that where the stock so sold was at the time worthless the amount paid therefor may be recovered as damages for the fraud. And it is further held that the intrinsic and not the market value of the stock sold is what controls; that its value at the time of the sale may be arrived at by the aid of subsequent developments; and that in the present case there was evidence to support a finding that the stock was worthless when the contract of sale was made."

See, also, *Watson v. Gardner*, 183 Minn. 233, 236 N. W. 213; also, *Davis v. Coshnear*, 129 Maine 334, 151 Atl. 725.

The amount for which these bonds could have been sold on the day after they were purchased is not the determining factor in this case. The plaintiff was not buying bonds for speculation. He was buying them for a long-time investment and the evidence admitted is of some value in this issue.

The next error of which defendant complains is the failure of the trial court to require the answer to question number 5 to be made more definite and certain. That question and answer were as follows:

"Question 5: With respect to each issue of securities on account of which you allow recovery, state the date or dates, as near as possible under the evidence, on which plaintiff discovered the fraud on account of which you allow such recovery.

"Answer: Description of issue on all issues on which allowances were made.
"Date or dates of discovery of fraud. After February 20, 1932."

The defendant argues that the jury should have been required to answer when the fraud was discovered as to each cause of action. It is difficult to see how this would have been of any help to the defendant. Without entering into a discussion it may be said that the evidence was that the discovery of the fraud was progressive and continued from day to day. The exact date when the fraud was discovered was of no consequence. It was held by this court in the former appeal that "if the fraud were discovered after the notice to repurchase was served then the action might proceed for rescission." The jury found in its answer to question number 5 that this was the case. There was substantial evidence to sustain the finding and that ended the matter.

The next error of which defendant complains is the failure of the

trial court to give a requested instruction defining the term "any Kansas municipal bond." The purport of the requested instruction was that plaintiff must establish that he believed the bonds he bought to be as good as bonds of the state of Kansas, the city of Wichita, the city of Topeka or other similar cities. There is no evidence that the plaintiff believed any such thing. Since the governing factor is the effect produced on the mind of the plaintiff, the instruction should not have been given.

The defendant next argues that the trial court failed to instruct the jury as to the application of testimony on the value of Kansas municipal bonds. The record discloses that the jury was instructed that this testimony should be taken by the jury for what it was worth on the question of whether the bonds bought were the kind of bonds they were represented to be.

The next error of which defendant complains is that the trial court failed to instruct the jury that the plaintiff must prove that he relied on the representations of the defendant before he purchased the bonds. An examination of the record discloses that while the court did refuse to give the instruction as requested by defendant the substance of it was given in another instruction.

The next error of which the defendant complains is an instruction given the jury by the trial court that the evidence of the value of the bonds at the time they were bought was of value only insofar as it tended to show whether or not the bonds were the kind of bonds which they were represented to be. That is, a bond wherein the interest would be paid and the principal paid when due. This instruction was a proper one.

The next error of which defendant complains is an instruction given by the trial court as to the Royal Oak and the Corpus Christi bonds. Defendant argues that the court in this instruction told the jury that these two issues had been held illegal. The instruction did not go that far. What the instruction amounted to was a statement that both issues were involved in litigation. The court instructed the jury that it should take this situation into consideration in determining what kind of bonds these were. Since the most the defendant contends for now is that the plaintiff might one day get his money by being adjudged to be an innocent purchaser, it hardly seems that the instruction was not justified.

The next error of which defendant complains is the giving of instruction number 27. It was as follows:

"Damages caused by a representation false in fact, may be recovered, if made to induce the damaged person to part with his money, even when such representation is made without actual knowledge of its truth or falsity, provided, of course, the person to whom such representations or statements are made believed the same and relied thereon."

This instruction is in accordance with the holding of this court in *Pellette v. Mann,* 116 Kan. 16, 225 Pac. 1067 and *Roome v. Petroleum Co.,* 111 Kan. 633, 208 Pac. 255. We still adhere to what was said there.

So far we have examined the arguments wherein the defendant maintains that the judgment against it should be reversed. We will now examine the cross-appeal of the plaintiff.

The first error of which plaintiff complains is that the trial court unduly limited the misrepresentations of fact that were submitted to the jury. What these questions were has been heretofore set out in this opinion. We have examined the record and conclude that the questions as to misrepresentations submitted were the only actionable ones pleaded.

The other errors urged by plaintiff have to do with requested instructions and the admission and rejection of testimony. We have concluded that the issues were fully covered by the instructions given, and there were no errors in the admission of the evidence.

The judgment of the trial court is affirmed.