## METROPOLITAN COAL CO. v. HOWARD.
### No. 280.

Circuit Court of Appeals, Second Circuit.
June 5, 1946.

Edmund J. Lamb and Purdy & Lamb, all of New York City, for appellant.

Albert T. Gould and Bingham, Dana & Gould, all of Boston, Mass., and Kirlin, Campbell, Hickox & Keating, of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a decree in the admiralty entered upon the claim of the Metropolitan Coal Company in a proceeding for limitation of liability by Thomas J. Howard, as owner of the "box barge," Thomas H. O'Leary. The question is how far Howard is liable for the loss of a cargo of coal owned by the claimant, when the barge, which carried it, foundered in Block Island Sound on December 4, 1940, about two miles west of the entrance to the Point Judith Harbor of Refuge. The facts are as follows. On November 1st, Howard and

the Coal Company signed a charterparty, chartering the whole of the barge to carry a cargo of coal from Edgewater, New Jersey, to Chelsea, Massachusetts. The charterparty stated that the barge had a "coal carrying capacity of 1800/1900 tons or thereabouts," and contained the usual exceptions, including "acts of God, dangers and accidents of the sea." It incorporated by reference the Limitation of Liability Act, 46 U.S.C.A. § 192, and "the provisions of and exceptions from, liability contained in" the Harter Act, 46 U.S.C.A. § 190 et seq.; and it then proceeded as follows: "If the Owner * * * shall have exercised due diligence to make the * * * Barge in all respects seaworthy and properly manned, equipped and supplied * * * neither the Owner * * * or the Barge shall be liable for any loss of * * * cargo resulting from * * * unseaworthiness of said Barge, * * * not discoverable by due diligence." Whether or not the tonnage mentioned in the charterparty is to be measured in net tons or gross, the O'Leary lifted only 1917 net tons of coal on November 6th at Edgewater, whence she set out in tow of the tug, "Greenough," in company with two other barges. On December 2nd, the flotilla, having passed through Long Island Sound without mishap, left New London, but was forced back by the weather. It set out again on the fourth, with the O'Leary in the lead, the two others behind her in tandem. They passed Watch Hill and into Block Island Sound that afternoon where the hawsers were let out to 150 fathoms each. Such information as the master of the tug had been able to get, indicated that the weather would be favorable, and so it continued until six o'clock in the evening. At that time, as the judge found, "there was a sudden change in the weather, the wind veering into the southwest and back to the south-southwest, and building up in strength, and the sea commencing to make." At seven-fifteen it had begun to snow, "and the sea continued to build up very fast"; the wind increased, but not so much as the seas, which were "much higher than was to be expected from the strength of the wind," though they were "not unusual" in those waters at that season. The judge found

that the O'Leary was so loaded that her freeboard amidships was only about eighteen inches, and the seas, which boarded her, broke in her hatch covers (an inch and one-half thick), and so filled her that she foundered. The other two barges broke adrift, went ashore and were also lost.

The judge held that the O'Leary was unseaworthy, when she broke ground at Edgewater, "by reason of overloading and because thereof of furnishing her with hatch covers which were too thin"; and since Howard had signed the charterparty stating that she had a carrying capacity of 1900 tons, he charged him as for a warranty and without limitation. This appeal raises three questions: (1) Whether the burden of proof rested on the shipper, Howard being a private, and not a public, carrier; and whether the shipper carried it; (2) whether the charterparty excused the barge under the quoted clause as to "due diligence"; (3) whether the incorporation of the Limitation of Liability statute in any event excused Howard. Before considering these questions we must decide whether two findings made by the judge were "clearly erroneous." The first is that the barge had only eighteen inches of freeboard amidships. Upon the trial the bargee said that the freeboard was three and one-half feet, and the master of the tug that it was about three feet. However, when the tug master was examined before the Inspectors less than a fortnight after the loss, he stated that his "best judgment" was that the barge had only eighteen inches of freeboard amidships, although, he added, this was only "a guess." At the trial he repudiated this "guess," although he acknowledged that it had been his best judgment at the time. We cannot say that it was "clearly erroneous" for the judge to choose the tug master's first judgment against his, and the bargee's recollection at the trial. The truth was more likely to be what the master supposed while the matter was fresh in his mind. Next are the findings as to the severity of the weather. At Block Island the hourly wind movement never rose beyond twenty-four miles, with a maximum of twenty-six; and at seven-thirty P.M. on that day the seas were recorded as only "moderate." Apparently they were heavier than was to be

expected from such winds; and they may well have been the result of stronger winds further to the west; but certainly there is no reason to differ with the judge, who discredited the testimony that the waves ever reached a height of twenty feet. Nor do we see any reason to disturb his other finding that they were no more than was usual in those waters at that season. At least, they were not of that exceptional violence which justifies the strange appellation—"an act of God."

The barge, having therefore foundered under conditions of wind and sea which she was intended to meet, was unseaworthy in fact. The Silvia, 171 U.S. 462, 464, 19 S.Ct. 7, 43 L.Ed. 241; The Southwark, 191 U.S. 1, 9, 24 S.Ct. 1, 48 L.Ed. 65; Edmond Weil, Inc., v. American West African Line, 2 Cir., 147 F.2d 363, 365. The statement in the charter-party that she had a "coal carrying capacity of 1800/1900 tons," was an express warranty (Denholm Shipping Co. v. W. E. Hedger Co., Inc., 2 Cir., 47 F.2d 213), and bound Howard without limitation. Pendleton v. Benner Line, 248 U.S. 353, 38 S.Ct. 330, 62 L.Ed. 770. Yet, although private, as well as common, carriers warrant the seaworthiness of their vessels, concededly there is a difference as to the burden of proof, for a shipper by private carrier must prove the breach. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. That difference is of no importance here, however, for courts have recognized over and over again that unfitness developing in a vessel shortly after she breaks ground, is proof enough of unseaworthiness. (We collected the cases in Commercial Molasses Corp. v. New York Tank Barge Corp., 2 Cir., 114 F.2d 248, 251.) Therefore we hold that, except as Howard may have modified his express warranty by the clause we have quoted, the claimant carried the burden of proof and must succeed.

The modification was that, if Howard "exercised due diligence to make * * * the Barge * * * seaworthy and properly manned, equipped and supplied," he was not to be liable for "unseaworthiness * * * not discoverable by due diligence." Although the scope of the warranty was therefore limited by the words "not discoverable by due diligence," upon that limitation was imposed the condition that Howard should use due diligence, and if the condition was not fulfilled, the express warranty stood without limitation. The clause as a whole is primarily directed to defects in hull and gear, rather than to overloading; but seaworthiness includes proper stowage and the limitation would apply if the evidence justified it. Read upon the situation before us, the clause as a whole meant that, if Howard had been duly diligent to see that the barge was able to carry 1900 net tons in December, with hatch covers of one and a half inches, he did not warrant her ability, provided her inability could not have been discovered by reasonable diligence. So far as we can see, the substance of the limitation is the same as that of the condition for it is hard to see how, if Howard used due diligence to learn whether the barge was suited for the voyage as she rode, her unfitness could have been discovered by duly diligent inquiry or information. It is not necessary, however, to decide whether the Coal Company had the burden of proving that her unfitness was so discoverable, because we hold that Howard had the preliminary burden of proving the exercise of due diligence to make her seaworthy, in spite of the fact that he was a private carrier. First, the condition was copied almost in ipsissimis verbis from § 3 of the Harter Act, 46 U.S.C.A. § 192; and, when parties to a private charter lift words out of the Harter Act, they must accept the interpretation which the courts have put upon them. The Framlington Court, 5 Cir., 69 F.2d 300, 307. Under § 3 of the Harter Act the owner has the burden of proof to show due diligence, as a condition of limitation upon his duties. The W. W. Bruce, 2 Cir., 94 F.2d 834. Second, the owner has access to all the facts relating to what diligence he has in fact used, and the shipper has none. It is patently fairer that the owner should be called upon to prove that those facts existed on which he has made the limitation of his liability depend. Third, the warranty of seaworthiness is a favorite of the admiralty and exceptions to it or

784

limitations upon it, are narrowly scrutinized. The Caledonia, 157 U.S. 124, 137, 15 S.Ct. 537, 39 L.Ed. 644; Compania de Navegacion La Flecha v. Brauer, 168 U.S. 104, 118, 18 S.Ct. 12, 42 L.Ed. 398; Spang, Chalfant & Co. v. Dimon S. S. Corp., 2 Cir., 57 F.2d 965, 968; The Framlington Court, supra, 69 F.2d 300, 303.

The judge found that Howard had not used due diligence to make the barge seaworthy and although that was a "mixed finding of law and fact," since it necessarily involved a standard of conduct, nevertheless we read it to include a true finding of fact so far as it involved the credibility of any relevant testimony. Howard made no effort to prove that he had used diligence to ascertain whether the barge was fit for the voyage as she rode, except his own statement that he thought that she was; and, although he put in evidence apparently all the voyages of the O'Leary for the past four years, in only a single instance had she lifted so large a cargo, and that was in the summer, as indeed had been all her voyages. Furthermore, one, DeMars, whom he called as an expert, and who had had a long experience, although he said that the O'Leary could safely have taken such a cargo upon such a voyage at any season if she had three feet freeboard, added: "but if you said one foot freeboard or two feet freeboard then I would have to make some reservations in telling you whether I think it is good or bad." We do not wish to say that it can never be adequate evidence of due diligence that an owner, long tried in the traffic of vessels of the kind, declares that he believes the venture a safe one. Save for exceptional situations where courts are sure enough of their ground to overrule the customs of a calling,* those customs measure the proper standard, and the bias of a party need not discredit his testimony upon such an issue, any more than upon any other. But plainly an owner's testimony is not conclusive even when it is not contradicted, and that is the more true, when he has the burden of proof. We hold that the warranty of seaworthiness was unlimited, that the Coal Company proved the breach, and that Howard was properly charged with unlimited liability for the loss.

Finally, it is apparent that the Coal Company should not be itself charged with lack of care for overloading the barge. A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past. Denholm Shipping Co. v. W. E. Hedger Co., supra, 47 F.2d 213, 214; The Fred Smartley Jr., 4 Cir., 108 F.2d 603, 606; The Soerstad, D.C., 257 F. 130. To argue that the promisee is responsible for failing independently to confirm it, is utterly to misconceive its office. The Coal Company was therefore quite right in loading the barge as it did; that is precisely what Howard intended that it should do, and now that he is called upon to indemnify his shipper because what he said has turned out to be untrue, he must respond.

Decree affirmed.

---

* The T. J. Hooper, 2 Cir., 60 F.2d 737; Sieracki v. Seas Shipping Co., Inc., 3 Cir., 149 F.2d 98, 100.