Stephen W. SHAMBAUGH, Farmers State Bank of Mentone and Lakeland Disposal Service, Inc., Appellants (Defendants Below),

v.

David N. LINDSAY, Appellee (Plaintiff Below).

No. 3-882A216.

Court of Appeals of Indiana, Third District.

Feb. 16, 1983.

Charles R. Tiede, Plummer, Tiede, Magley, Metz & Downs, Wabash, for appellants Stephen W. Shambaugh and Lakeland Disposal Service, Inc.

Richard K. Helm, Rockhill, Kennedy, Pinnick, Bent & Pequignot, Warsaw, for appellant Farmers State Bank of Mentone.

Michael E. Armey, R. Steven Hearn, Rasor, Harris, Lemon & Reed, Warsaw, for appellee.

HOFFMAN, Presiding Judge.

On May 18, 1976, David N. Lindsay and Stephen W. Shambaugh entered into a stock sale agreement in which Shambaugh purchased all of the capital stock in Lakeland Disposal Service, Inc. (Lakeland), an Indiana corporation whose principal business was the operation of an industrial waste disposal site. Lindsay subsequently brought suit for money due on contract and to foreclose security interest when Shambaugh failed to make the final principal payment on this sale. In answer to this complaint Shambaugh admitted default but sought a setoff against damages by virtue of alleged fraud and breach of warranty on the part of Lindsay. Shambaugh now appeals from the trial court's judgment for Lindsay and its denial of the claimed setoff.

The record reveals that included within the stock sale agreement were several express warranties by Lindsay, reading in pertinent part as follows:

"As inducement and additional consideration for the Purchaser to purchase the aforesaid stock hereunder the Seller does hereby represent and warrant to the Purchasers the following, to-wit: ... (iii) That said Lakeland Disposal Service, Inc., is a corporation duly organized and existing and in good standing under and by virtue of the laws of the State of Indiana; (iv) That said corporation's audited financial statement for the year ending September 30, 1975, a copy of which is attached hereto, and the corporation's unaudited financial statement for the pe-

riod ending April 30, 1976, a copy of which is attached hereto, have been presented to and reviewed by the Purchaser and the same substantially reflect the financial condition of said corporation including the book value of its assets, its liabilities and its net worth; (v) That since April 30, 1976, there have been no transactions made nor any liabilities incurred excepting only those incurred in the ordinary course of its business; and (vi) That from and after the execution of this agreement and until the closing date hereof said corporation will not incur nor assume any indebtedness nor make any commitment or transactions of any kind excepting only those as may be reasonably required in the ordinary course of business[.]"

*Record* at 155–156.

The dispute between the parties arose primarily because Lindsay had not been operating Lakeland in strict compliance with the provisions of Stream Pollution Control Board Regulation 18,[1] which requires that all exposed solid waste be covered and compacted by the end of each operating day. As a result of these deficiencies the Indiana State Board of Health required Shambaugh shortly after he began operation of Lakeland to bury a large amount of sludge which Lindsay had allowed to accumulate on top of the ground in a drying pit. It cost Shambaugh $9,000 to cover these wastes,[2] a liability which was not reflected in the financial statements included within the express warranties.

In rendering judgment the trial court entered the following conclusions:

"1. That the burden of complying with SPC 18 in the operation of a sanitary landfill are liabilities imposed upon the permit holder by law.

"2. That the failure of Lakeland's warranted income statement of April 30, 1976 to reflect the 7-months costs of compliance with the daily cover and compacting requirements of SPC 18 resulted in an overstatement of income to the extent that certain costs, as a cash flow item, had not during the period of those statements been incurred; that it had not been incurred because the sludge to be buried was drying in a drying pit.

"3. That Shambaugh could not have relied upon that inverse representation; for the representation which he seeks to establish was not direct. Because he had seen the drying pit, he himself knew or at least should have known buying into the business the requirements of the regulations, and had been warned by a representative of the Stream Pollution Control Board that a problem existed with respect to compliance with regulations and he failed to follow up and pursue the factual meaning of that warning.

"4. That defendant's claim for set-off exists under the legal standards contained in Restatement of the Law, Second: Torts § 551 [3] and he has not established the facts necessary to invoke that standard.

"5. That the plaintiff is therefore entitled to recover of defendants upon their [sic] complaint."

*Record* at 79.

Shambaugh apparently acknowledges that the trial court's findings and conclusions are proper as they relate to his claim for setoff under a fraud or misrepresentation theory. However, he contends that the trial court erred by failing to correctly apply contract law principles for his claim under the breach of warranty theory. The ultimate issue to be resolved is therefore whether contract law principles differ markedly from tort law principles in this situation,

---

1. Ind.Admin. Rules & Regs. (13–7–10–1)—72 (Burns Code Ed.).

2. In addition, Shambaugh claimed that the annual cost of maintaining the landfill in conformity with SPC 18 was $18,000, a sum which was also not reflected in Lindsay's financial statements.

3. Restatement, Second, Torts § 551 is entitled "Liability for Non-disclosure" and basically sets forth the consequences of engaging in either negligent or intentional misrepresentation. This section does not, however, deal with the effects of a breach of an express warranty.

i.e., whether reliance by the buyer is necessary in an action for breach of the seller's warranty.

Lindsay contends that since the trial court specifically found that Shambaugh could not reasonably have relied on the representations in the express warranty given the information that was previously available to him the breach of warranty claim is also precluded. In so contending Lindsay relies on the holding in *Land v. Roper Corp.* (10th Cir.1976) 531 F.2d 445, a case involving similar warranties within a stock sale agreement. It was noted in *Land* that:

"Generally reliance by the buyer is necessary in an action for breach of the seller's warranty. *See* 1 Williston on Sales Sec. 206 (Rev. ed. 1948). To the same effect is *Shippen v. Bowen,* 122 U.S. 575, 7 S.Ct. 1283, 30 L.Ed. 1172 (1887) and also Prosser on Torts Sec. 105 at 693 (1971 ed.). "The Sales Act which was the law in Kansas prior to the Uniform Commercial Code prescribed reliance as a necessary element. *See* 2 Williston on Sales Sec. 15–5 (Squillante and Fonseca ed. 1974). The warranty is not actionable in its absence. *Cf.* UCC 2–313, Comment 3, which has been held to express an intent that the reliance requirement be continued. *See Speed Fastners, Inc. v. Newsom,* 382 F.2d 395 (10th Cir.1967); White & Summers, Uniform Commercial Code, at 277.

"It is reasonable to infer that the reliance requirement applicable to sales of goods would be extended to the transfer or sale of securities.

"Another approach to our inquiry whether Kansas law probably would hold reliance necessary in an express warranty case arises from the analogous Kansas rule recognizing a cause of action for innocent misrepresentation made without negligence or scienter if it was made to induce a business transaction and if it was relied on by the plaintiff to his detriment. *See Roome v. Sonora Petroleum Co.* 111 Kan. 633, 208 P. 255 (1922) (sale of land and oil well casing); *Becker v. McKinnie,* 106 Kan. 426, 186 P. 496 (1920)

(sale of water rights). The breach of express warranty is similar to the action for non-negligent or non-intentional misrepresentation since the warranty action emerged from the law of deceit. *See* Prosser on Torts Sec. 105 at 686. Also, Williston recommended that the innocent misrepresentation action be employed to remedy the breach of warranty. *See* Williston, Liability for Honest Misrepresentation, 24 Harv.L.Rev. 415 (1911).

"We are mindful that Williston has also said in 1 Williston on Sales Sec. 206 (Rev. ed. 1948) that reliance is ordinarily not much of an issue in a breach of warranty case. In other words, the parties frequently take for granted that there was reliance, but here the situation is quite different. In this case Roper made reliance its chief contention. Land took the opposite position and offered evidence that Roper had made an independent evaluation of the Land Company and did not rely on Land's representations at all. Land showed that Roper personnel and consultants had free access to the Land Company financial records and that Roper was fully aware of a drop-off in sales shortly before the merger. There was also evidence that Roper's directors relied entirely on projections by Roper employees.

"In sum, we are of the opinion that the trial court was correct in its ruling that reliance was an essential element and in effect holding that there was substantial evidence to establish that Roper made an independent investigation." (Footnotes omitted.)

531 F.2d at 448–449.

Although case law on this issue is admittedly sparse, this Court is of the opinion that the better view is presented in *Glacier Gen. Assur. Co. v. Cas. Indem. Exchange* (D.Mont.1977) 435 F.Supp. 855, at 860–861, in which it was held that:

"The problems of a reliance, and a right to rely, on the representations do not appear when the action is grounded in warranty. The warranty is as much a

part of the contract as any other part, and the right to damages on the breach depends on nothing more than the breach of warranty. The rule is stated in *Metropolitan Coal Co. v. Howard,* 155 F.2d 780, 784 (2d Cir.1946), in this language:

'... A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.'

"While *Metropolitan Coal Co. v. Howard,* supra, is an admiralty case, the rule stated is one of general application. *Paccon, Inc. v. United States,* 399 F.2d 162, 185 Ct.Cl. 24 (1968)."

In *Ainger v. Michigan General Corp.* (S.D. N.Y.1979) 476 F.Supp. 1209, the plaintiffs similarly argued that reliance is an element of breach of warranty and that such reliance is the equivalent of the reliance element in the tort of misrepresentation. The court responded by holding that:

"Transplanting tort principles into contract law seems analytically unsound. If a party to a contract purchases a promise, he should not be denied damages for breach on the grounds that it was unwise or unreasonable for him to do so. Indeed, Judge Hand admonishes: 'To argue that the promisee is responsible for failing independently to confirm [the warranty], is utterly to misconceive its office.' *Metropolitan Coal Co. v. Howard,* 155 F.2d 780, 784 (2nd Cir.1946). Thus, a claim for relief in breach of warranty is complete upon proof of the warranty as part of a contract and proof of its breach." (Footnote omitted.) 476 F.Supp. at 1224–1225.

Furthermore, the above result is consistent with the existing law of this state. In

*McCarty v. Williams* (1915), 58 Ind.App. 440, at 445–446, 108 N.E. 370, at 372, it was held that:

"Defects known to the buyer may sometimes be excluded from a warranty because they cannot be presumed to have been intended by the parties to be insured against, but whatever, under the circumstances the parties can be said to have intended by their contract, to that will the seller be held as to other lawful engagements, and it is not necessary to the buyer's recovery that he should have been deceived.... One party is induced by the reliance upon the engagements of the other contracting party, and in a pleading based upon a breach of such a warranty, if the warranty be sufficiently shown to have entered into the contract as an intended element thereof, and as a part of the consideration for the purchase price, it is not necessary, any more than in other suits on contracts, to allege reliance of the buyer upon the warranty." (Citations omitted.)

Since the trial court failed to apply the applicable law to all of the issues before it, this cause is remanded for trial on the issue of whether Shambaugh was entitled to a setoff under his claim of breach of warranty.[4]

Reversed and remanded.

STATON, J., concurs.

NEAL, J., participating by designation, concurs.

---

4. It should be noted that this Court is not in a position to decide whether in fact such setoff should have been properly awarded. There appears to be a total failure of proof as to whether the expenses incurred by Shambaugh should have appeared on the financial statements prepared by Lindsay. However, given the findings by the trial court to that regard and its erroneous application of tort principles to a contract claim, this Court is compelled to remand for a full and proper trial on the issue.