ESSEX GROUP, INC., As Successor
to Essex International, Inc.,
Appellant–Plaintiff Below,

v.

Richard G. NILL, Charlotte A. Nill, Mary
Kay Nill Doepker, Richard B. Nill, Jr.,
Nancy Ann Nill, and Summit Bank, as
successor to the Indiana Bank and
Trust Company of Fort Wayne as
Guardian for Mark Steven Nill, Sarah
Joan Nill, and Joseph Charles Nill, and
Fort Wayne Tool, Die & Engineering
Company, Appellees–Defendants Below.

No. 76A03–9112–CV–386.

Court of Appeals of Indiana,
Third District.

June 29, 1992.

Thomas M. Shoaff, James H. Ham, III, Michael J. Nader, Baker & Daniels, Fort Wayne, for appellant.

Edward L. Murphy, Jr., Miller Carson & Boxberger, Fort Wayne, Edward J. Liptak, Miller Carson & Boxberger, Bloomington, for appellees.

STATON, Judge.

Essex Group, Inc. ("Essex") appeals the dismissal of its complaint against the appellees, raising the sole issue of whether the trial court correctly concluded that Essex's complaint failed to state a claim upon which relief could be granted.

We affirm in part, reverse in part, and remand.

This is the fourth in a series of cases involving the share exchange purchase of Fort Wayne Tool & Die, Inc. by Essex. *See Essex Group, Inc. v. Nill* (1984), Ind. App., 462 N.E.2d 1334, *cert. denied* 471 U.S. 1017, 105 S.Ct. 2022, 85 L.Ed.2d 304 (*Essex I*) and *Essex Group, Inc. v. Nill* (1989), Ind.App., 543 N.E.2d 393, *reh'g denied* (*Essex II*). The underlying facts of all four cases are the same, and were set out in *Essex I:*

> In 1961 Richard Nill (Nill), president of Fort Wayne Tool & Die, negotiated a trust agreement (Plan) to provide retirement and death benefits to salaried employees of the company. The Plan provided these benefits from two funds, a General Fund and an Auxiliary Fund. The employer contributed to the General Fund in sufficient amounts to purchase insurance policies in order to provide death benefits if a participant in the Plan died prior to retirement. The employer also contributed amounts to the Auxiliary Fund sufficient to convert the insur-

ance policies into annuities upon a participant's retirement.

In 1970, Essex Group, Inc. purchased Fort Wayne Tool & Die, Inc. and assumed responsibility for the Plan. In 1976, Nill retired prior to his normal retirement date. At that time, the Plan Trustee had credited the Auxiliary Fund with $55,244.40 in excess of the amount necessary to convert Nill's insurance policy into an annuity. Thereafter, Nill sought to receive these excess funds. The Plan Trustee brought a complaint against Nill and Essex seeking a declaratory judgment regarding the status of this money in the Auxiliary Fund.

*Essex I* at p. 1335 (footnote omitted).

In *Essex I*, we directed partial summary judgment in favor of Essex on Richard Nill's claim under the Employee Retirement Income Security Act (ERISA) for the money in the Auxiliary Fund. After remand, Richard Nill was granted summary judgment on his claim for reformation of the Plan to provide for payment of excess monies to Plan participants. In *Essex II*, we affirmed the grant of summary judgment, holding that the Plan should be amended to add a provision left out due to a scrivener's error. Richard Nill then filed a Motion to Amend Judgment pursuant to Trial Rule 60(B), contending that under the terms of the Plan as reformed, he was also entitled to a *pro rata* share of any additional monies in the Plan upon its termination. Our Fourth District affirmed the trial court's denial of the Motion to Amend Judgment in a memorandum opinion. *Nill v. Essex Group, Inc.* (1991), Ind.App., 582 N.E.2d 489 (*Essex III*).

While *Essex III* was still pending on appeal, Essex brought this suit alleging breach of warranties contained in the contract for acquisition of Fort Wayne Tool and Die, Inc. ("Contract"). Named as parties defendant were Richard Nill, the partnership of Fort Wayne Tool, Die & Engineering Company,[1] and the other individuals who, along with Nill, held interests in the partnership (collectively, "Nill"). Nill moved to dismiss. The trial court held that the complaint failed to state a claim, but pursuant to Trial Rule 12(B) gave Essex an opportunity to amend its complaint. After the complaint was amended, Nill again moved to dismiss. Finding again that Essex's amended complaint failed to state a claim upon which relief could be granted, the trial court entered a judgment of dismissal. On appeal, Essex contends that dismissal of its complaint was improper.

In determining whether a complaint should be dismissed for failure to state a claim, facts alleged in the complaint must be taken as true. Dismissal is appropriate only where it appears that under no set of facts could plaintiffs be granted relief. *Thiele v. Ind. Dept. of Highways* (1985), Ind.App., 472 N.E.2d 1274.

■ Essex bases its cause of action on the following provisions of the Contract:

3. *Representations and Warranties of the Shareholders*

The Shareholder and each of the partners of the Shareholder, jointly and individually, hereby represents and warrants to Essex as follows:

\* \* \* \* \* \*

3.8 *Lists of Properties, Contracts, Etc.* The Company has heretofore delivered to Essex complete and accurate lists and descriptions of the following:

3.8.1 All insurance policies, bonus plan, deferred income plans, profit-sharing plans, and pension plans of the Company in force;

\* \* \* \* \* \*

3.10 *Compliance with Contracts and Commitments.* To the best of his knowledge, the Company has complied with the provisions of all leases, contracts, commitments or understandings to which it is a party or under which it is bound and is not in default under any of them except possibly for immaterial defaults not involving any material adverse effect upon the Company's position

---

1. The partnership was the sole shareholder of Fort Wayne Tool and Die, Inc. before the corporation was purchased by Essex.

thereunder or its business assets. Except as set forth in the lists delivered pursuant to Paragraph 3.8 hereof, the Company has no obligation or liabilities of any kind to any partner of the Shareholder and has no employment, stock option or other agreements of any character with, or deferred income, bonus, profit sharing, health, accident, or insurance plan covering any of its officers or employees and has no pension obligations and is not presently making any pension or retirement payments to any present or former officer or employee.

\* \* \* \* \* \*

8.2. *Undertakings.* The Shareholder (or any one or more partners thereof) and Essex shall indemnify and hold harmless the other party from all claims, demands, liabilities, loss or damage (including reasonable counsel fees and other reasonable out-of-pocket expenses) arising subsequent to the Closing out of any breach of any such representation, warranty, covenant or agreement by the other party.

Record, pp. 151–164. In addition, at the close of the transaction, Nill executed a document certifying that all of the representations and warranties made in the Agreement were true at the time of closing. Record, p. 169. Essex alleges that since the Plan was reformed to permit lump sum distributions as a result of a scrivener's error, the pension plan provided to Essex by Nill was not "complete and accurate" as warranted in the Contract.

Generally, a party may allege an action for breach of contract by pleading: 1) the existence of a contract; 2) the breach thereof by the defendants; and 3) damages. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448, 461, *reh'g denied.* A promise in a contract may take the form of a warranty. A warranty is:

"an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the

promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past."

*Shambaugh v. Lindsay* (1983), Ind.App., 445 N.E.2d 124, 127, *quoting Metropolitan Coal Co. v. Howard* (2d Cir.1946), 155 F.2d 780, 784. *See also CBS Inc. v. Ziff-Davis Publishing Co.* (1990), 75 N.Y.2d 496, 554 N.Y.S.2d 449, 452, 553 N.E.2d 997, 1000. This passage accurately describes the warranties contained in the Contract—the assurance of the existence of facts, with a promise of indemnity if the facts proved untrue. The scope of the indemnification clause in the agreement defines the remedy for breach: the breaching party "shall indemnify and hold harmless the other party from all claims, demands, liabilities, loss or damage (including reasonable counsel fees and other reasonable out-of-pocket expenses)" caused by the breach of warranty. Record, p. 164.

In its amended complaint, Essex alleges the existence of the Contract and attaches a copy. Essex also alleges the existence of the warranty (contained in the Contract) that the description of the pension plan given to Essex at the time of the agreement was accurate. Moreover, Essex alleges that the warranty has been breached, as evidenced by the fact that the contract was reformed to include a term not found in the written contract at the time of acquisition. These allegations are sufficient to withstand a motion to dismiss on the first two elements of the breach of warranty claim.

■ Nill argues that the warranty could not have been breached because the reformation of the Plan related back to its inception. This argument has no merit. Even though the reformation of the Plan related back to its inception, the omitted terms were not disclosed to Essex at the time of the making of the Contract. This nondisclosure is the basis of the breach of warranty action. Nill also argues that there is no evidence that Essex relied upon the Plan, citing *Essex II* at 396–397. Essex correctly points out that reliance is not an

element of a breach of warranty claim. *CBS, supra; Shambaugh, supra.*

The third element—damages—is more problematic. As a result of the alleged breach of warranty, Essex claims it has incurred the following expenses for which it is entitled to be indemnified:

(a) The loss of its reversionary interest in the Plan under the terms of the Plan. The Plan, which was restated effective April 20, 1976, provides that any assets remaining in the Trust after participants' benefits have been distributed, shall revert to the employer, Essex. However, because of Nill's actions and the expenses associated therewith, Essex has now suffered the loss of its anticipated reversionary interest and that loss is in excess of $200,000.

(b) The loss of in excess of $100,000 incurred in defending the Plan from the multiple and shifting claims of Nill. Such expenses are continuing to accrue as Nill prosecutes his third appeal to secure yet further distributions from the Plan.

(c) The obligation to pay Trustee's fees and Trustee's legal expenses incurred in this matter, which fees Essex believes to be in excess of $15,000. In his present appellant [sic] brief, Nill asserts these expenses to be the direct obligation of Essex, thereby increasing the net remaining funds available for further claims by Nill.

Record, pp. 145–146. Essex also alleges that it is subject to future liability as a result of the reformation of the Plan. Nill argues that Essex is not entitled to any of these damages under the indemnification clause in the Contract. Specifically, Nill argues that the loss of the reversionary interest and the attorneys' fees incurred were all a result of subsequent legislation not contemplated by the parties at the time of execution of the contract. Further, Nill argues that under Indiana law, Essex may not recover damages which it has not yet incurred under an indemnification agreement.

We first address Essex's claim for damages for trustee's fees not yet paid and for future liability to Plan claimants. The obligation to indemnify does not arise until the party seeking indemnity suffers loss or incurs damages. This may occur when the party seeking indemnity 1) pays the underlying claim; 2) pays judgment on the underlying claim; or 3) tenders payment in settlement of the underlying claim. *TLB Plastics v. Proctor and Gamble* (1989), Ind.App., 542 N.E.2d 1373, 1376, *transfer denied.*[2] Essex has not paid anything to the trustee, nor has it incurred any losses from future liability. The trial court properly dismissed Essex's claim for damages not yet incurred.

We next address Essex's claim of damages for loss of its reversionary interest. Nill argues that since Essex did not have a reversionary interest in the trust assets at the time of the execution of the Contract, it is not entitled to indemnity for loss of that interest. The record reveals and Essex concedes that it did not have a reversionary interest in the Plan at the time of execution of the Contract. However, in 1976 Essex caused the Plan to be amended to provide that all residual assets in the trust would revert to Essex. We will construe a contract of indemnity to cover all losses and damages to which it reasonably appears that the parties intended it to apply. *Zebrowski and Assoc., Inc. v. City of Indianapolis* (1983), Ind.App., 457 N.E.2d 259, 261. Clearly, the parties did not intend coverage for damages resulting from the loss of a reversionary interest to which Essex was not entitled at the time the Contract was signed and which resulted from a unilateral amendment to the Plan six years later.

Finally, we address whether Essex may recover as damages attorneys' fees incurred in its defense in the declaratory judgment action. An indemnitee who incurs legal expenses through defending an action against him for which he is entitled to indemnification may recover the ex-

---

**2.** Note, however, that Trial Rule 14 permits a claim for indemnity to be litigated contempora- neously with the injured party's claim. *TLB, supra,* n. 1.

penses of maintaining the defense, including reasonable attorneys' fees. *Zebrowski, supra,* at 264. In addition, he may recover the cost of prosecuting the indemnity clause. *Id.* Here, the Contract explicitly provided for the recovery of "reasonable counsel fees and other reasonable out-of-pocket expenses." The trial court found, however, that Essex was not entitled to the attorneys' fees which it claimed in the complaint:

3. [Essex] had no obligation to defend against the position of Defendant, Richard Nill in the prior litigation and had no reason to resist the claim of Richard G. Nill in said litigation.

4. The law of the case holds that the claim of Richard G. Nill, which prevailed, imposes no liability against [Essex] in that the prevailing claim was for money already on deposit in trust outside the control of [Essex].

5. [Essex] would not have been at risk had it not resisted the claim of Richard G. Nill in the original litigation.

6. The attorney's fees claimed by [Essex] in this cause were not, under the law of this case, proximately caused by any breach of warranties of any of the Defendants.

Record, p. 121. Essex argues it was required to defend because it was subject to potential liability through ERISA and the federal tax code. Nill responds that any potential liability was the result of legislation enacted subsequent to the execution of the Contract.

We are hampered by our review of this issue by the limited record before us. As this case was disposed of by a motion to dismiss, the trial court only reviewed the complaint in reaching its judgment. The trial court's finding that Essex was not required to mount a defense in the declaratory judgment action amounted to a finding that the attorneys' fees incurred by Essex were unreasonable as a matter of law. We agree with the trial court that if Essex was not "at risk," any attorneys' fees incurred by it were unreasonable as a matter of law. However, we are unable to conclude that Essex was not "at risk" from the record.

Such a conclusion would require, at the very least, a review of the pleadings from the declaratory judgment action filed in Allen Superior Court. The record of the Allen County litigation was not considered by the trial court, nor was it ever a part of the record in this case. Thus, the trial court erred in granting Nill's motion to dismiss on the recovery of attorneys' fees and costs in the Allen County litigation as damages for breach of warranty.

 Although we reverse, since some of the contentions raised by the parties will certainly arise again in the trial court, we will address them here to avoid future confusion. The parties are in disagreement as to the effect subsequent changes of the law will have on the terms of the Contract. It is well settled in Indiana that unless the contract provides otherwise, the laws in existence at the time and place of the making of a contract are a part of the contract without any statement to that effect. *Evansville–Vanderburgh School Corp. v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831, 839. Laws enacted subsequent to the execution of the agreement are not a part of the contract unless the contract clearly indicates that it was the intention of the parties to incorporate subsequent changes in the law. *Ethyl Corp. v. Forcum–Lannom Assoc., Inc.* (1982), Ind.App., 433 N.E.2d 1214, 1220, *transfer denied.*

 The Contract evidences no intention that the parties are to be governed by subsequent changes in the law; the Contract merely states that it is to be "governed by and construed in accordance with the law of the State of Indiana, applicable to contracts made and to be performed therein...." Record, p. 164. Therefore, the law in effect at the time of making of the Contract is the applicable law. Thus, the law in effect at the time of the making of the Contract is relevant in determining whether Essex incurred damages as a result of the alleged breach of warranty. In ascertaining whether Essex was "at risk," i.e. whether it could be put in a detrimental position as a result of the declaratory judgment action if it chose not to defend, subsequent statutes which might have changed

its pension obligations, such as ERISA, should not be considered.[3] Essex may only recover attorneys' fees and costs if it had a protectible interest in the litigation viewed under the law as it existed at the time of the making of the contract.

Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

GARRARD and BAKER, JJ., concur.

**3.** Nor should Essex's subsequent amendment of the Plan to provide for a reversionary interest be considered. While a valid reason to defend in the declaratory judgment action, the parties could not have anticipated this development at the making of the Contract, and Essex is not entitled to indemnification for attorneys' fees incurred to protect it.